A11A0714. RAMSEY v. MIDDLETON.

(713 SE2d 428)

ADAMS, Judge.

Emmett Reid Ramsey appeals following the imposition of a stalking protective order, arguing that the trial court abused its discretion by entering the order because the evidence was insufficient to establish the elements of the offense of stalking. We agree and reverse.

The record shows that Ramsey and the petitioner, Ginger Leeanne Middleton, had a personal relationship over 15 years ago. At the time of the incident giving rise to the filing of the petition, Ramsey had a contract with the local school system to paint the school and for that reason was frequently on school property. Middleton's children attended one of the schools, and after she was a character witness against Ramsey in unrelated litigation, Middleton began making complaints against him when she would see him in the same areas of the school where she would be picking up her children. Middleton also requested that the school resource officer inform Ramsey to stay away from her and her children because she was afraid of him due to their past history and her testimony against him. Middleton also testified that she and her husband began documenting and photographing Ramsey's appearances "every single time he came into the school zone." Middleton also alluded to "incidents" involving Ramsey since she had been a witness against him, but did not give any explanation or present other evidence

concerning what occurred during these "incidents."[1] Further, Middleton testified that Ramsey did not speak to her or her children, threaten her, text her, or otherwise communicate verbally or in writing during any of the times she had seen him on school property.

Middleton further testified that at the time of the incident giving rise to the filing of the petition, she and her husband were parked in the back parking lot of the middle school near the ball fields. The parking lot is a U-shaped, one-way parking lot, and it appears that the Middletons were parked at the apex of the parking lot. Ramsey drove into the parking lot, and according to Middleton, stopped, turned his wheels hard to the right and then came directly at them "knowing that my husband was taking pictures at that time." Middleton also testified that there were children and parents in the parking lot and Ramsey was driving without regard for their safety.

Middleton testified that Ramsey then pulled into the far end of the parking lot, and the evidence shows that Ramsey called 911. Joseph Simms, the school resource officer, arrived at the scene and spoke to Ramsey, who told him he was in fear for his life because he knew Middleton's husband had a gun. Simms testified he told Ramsey he was "full of shit" and explained that the reason he said that was because he did not think Ramsey would be standing in the middle of the parking lot if he was afraid. Simms further testified that he advised Mr. Middleton to take out a warrant for Ramsey, and a warrant for assault was subsequently issued against Ramsey but was, according to the briefs of the parties, later dismissed.

Simms also testified that he observed a videotape of the incident in the parking lot and that Ramsey drove straight toward the Middletons' vehicle, turned away just before he got to it, and then briefly drove as if he was going to back into it. Simms also testified that the video showed, contrary to Middleton's testimony, that there was no one in the parking lot except the Middletons at the time Ramsey was driving through. Further, he said that Ramsey had complained to him about the Middletons taking pictures of him, and the report he filed concerning the incident stated that Ramsey had also complained about being watched everywhere he went. Further, the report indicated that Ramsey told him that he was there to watch a ball game with a friend, and that friend testified that he had asked

---

[1] In her brief on appeal, which she only filed after being ordered to do so by this Court, Middleton states that "Ramsey would . . . make it a point to drive through the areas [where she] would be waiting on [her] children . . . [and] would drive by [her] vehicle and look at [her] as if he wanted [her] to see him and to make [her] fearful of his presence." However, neither she nor anyone else testified about these events. And although Middleton requests that we overlook any deficiencies in her brief on appeal due to her pro se status, she has provided no citations to the record or transcript and many of her factual assertions appear to be without evidentiary support.

Ramsey to come down to the ball fields that day. Simms also testified that he had contacted someone concerning Ramsey's contract with the school and that it was confirmed to him that Ramsey had a contract to paint the school and had permission to be there "at all hours during the day." The maintenance director for the school also testified that Ramsey had a contract to paint the school and that he had known Ramsey for four and one half years and that there had never been any issues or problems with Ramsey during that time.

Stalking is defined in OCGA § 16-5-90 (a) (1):

> A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "contact" shall mean any communication[.] . . . [T]he term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.
>
> In order to obtain a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence. OCGA §§ 16-5-94 (e), 19-13-3 (c). The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court . . . , and will not be reversed absent an abuse of that discretion. *Alexander Properties Group, Inc. v. Doe*, 280 Ga. 306, 307 (1) (626 SE2d 497) (2006).

*Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007).

In this case, we agree with Ramsey that Middleton did not meet her evidentiary burden and that the trial court abused its discretion by issuing the protective order. Even construed to support the trial court's imposition of the protective order, *De Louis v. Sheppard*, 277 Ga. App. 768, 769 (627 SE2d 846) (2006), the evidence admitted at the hearing was clearly insufficient to establish the necessary "pattern" of harassing and intimidating behavior. See *State v. Burke*, 287 Ga. 377, 378-379 (695 SE2d 649) (2010) ("harassing and intimidating conduct must be established by, among other things, 'a

*pattern* of harassing and intimidating behavior' " and a single violation of a protective order by itself is insufficient) (punctuation omitted; emphasis in original). Even assuming that the incident in the parking lot constituted the requisite contact of an intimidating or harassing nature, the only other evidence presented was that Ramsey and Middleton would sometimes be in the same place at the school, a place both had the right to be. Although, as stated in footnote 1, Middleton argues in her brief on appeal that Ramsey made it a point of being in the same place where she was picking up her children, and that he would look at her so as to make her fearful, she did not testify to these alleged occurrences at the hearing, referring vaguely only to "incidents" which started occurring after she testified against Ramsey in another matter. Likewise, although Middleton argues that there were "witnesses that could have been called" to testify about "behavior that would be considered intimidation for the purpose of causing fear," those witnesses were not called despite it being Middleton's burden to furnish the necessary proof of her allegations of stalking. Based on the record before us, we find that Middleton did not meet her burden of showing that Ramsey committed the offense of stalking and that, therefore, the protective order must be reversed.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JUNE 24, 2011.

*Rudjard M. Hayes*, for appellant.
Ginger L. Middleton, *pro se.*