S11F1035. KENT v. KENT.
(716 SE2d 212)

NAHMIAS, Justice.

Appellant challenges a divorce decree and the trial court's post-decree order denying his motion for a copy of the trial transcript. We hold that the trial court erred in denying the transcript motion, and we should not resolve the challenges to the divorce decree without the transcript. Accordingly, we reverse the transcript order and remand the case.

1. On July 15, 2009, Stacey Kent ("Wife") filed for divorce from her husband of 23 years, appellant Jeffrey Kent, Sr. ("Husband"). On November 15, 2010, the trial court held a bench trial at which both parties appeared and were represented by counsel. A court reporter was also present at the request of Wife's attorney. At the outset of the trial, the court asked who had requested the court reporter, because in the Toombs Judicial Circuit, court reporters are non-salaried and available at civil trials only when requested by one or both parties. Wife's attorney responded that he had requested the court reporter, while Husband's attorney remained silent. The court then said, "So you will be responsible, then, for her cost," to which Wife's attorney replied, "Yes." Again, Husband's attorney said nothing. At the conclusion of the trial and after the judge had left the bench, the court reporter, whose tape recorder was still on, asked for clarification regarding whom to bill for attending the trial and taking notes of the proceedings. Wife's attorney said, "It's up to [Husband's attorney] if he wants in on it or not," to which Husband's attorney replied, "I'm going to let [Wife's attorney] have it." Husband asserts that an official transcript has been prepared from the court reporter's notes, although he cites nothing in the record to support this assertion. Wife denies that an official transcript has been prepared.

On November 23, 2010, the trial court wrote the parties a letter, which was later filed, with findings of fact and conclusions of law. After receiving the letter, Husband filed a motion to require the court reporter to transcribe her notes and provide him with an official transcript of the trial. The motion twice acknowledged that Husband "declined to participate in the takedown costs at the time of the

trial" but claimed that factual findings in the letter ruling misstated the parties' stipulations and were improperly based solely on argument of counsel and not evidence. Thus, the motion said, "it is now imperative that a transcript of the proceedings be produced" so that Husband could effectively appeal the divorce decree. Husband added that he was now willing to pay the entire cost of having the court reporter appear at the trial and of having her transcribe her notes to prepare an official transcript.

On December 20, 2010, the trial court entered a divorce decree conforming to the letter ruling. On January 5, 2011, the court held a hearing on Husband's transcript motion. The court said that it understood why the court reporter asked for clarification at the end of the trial about whom to bill and expressed regret that the court had not "done a better job" at the start of the trial "to have gotten that question answered."

However, on January 19, 2011, the trial court entered an order denying the transcript motion. The court found that Husband and his counsel "made a conscious, intentional decision to remain silent" when the court made an on-the-record inquiry into which party would be responsible for the takedown costs and "a definitive ruling at the commencement of the proceedings that [Wife] would be solely responsible for the costs of reporting." The court also found that Husband's failure to participate in the takedown costs was intentional and "not due to inadvertence or mistake." The court declined to allow Husband to "take advantage of his opponent by only agreeing to pay for the costs of the court reporter now that he is certain that he needs the transcript."

Pursuant to this Court's former pilot project for divorce cases (now set forth in Supreme Court Rule 34 (4)), we granted Husband's application for discretionary appeal, and he filed a timely notice of appeal. He also filed an "Extraordinary Motion for Relief" seeking immediate review of the order denying his motion for a copy of the transcript, which we decided to resolve along with the appeal.

2. (a) In civil cases, a court reporter and official transcript are not generally required, although a transcript may be needed to obtain full appellate review. See, e.g., *Harrington v. Harrington*, 224 Ga. 305, 306 (161 SE2d 862) (1968) ("Since the other enumerations of error require a consideration of the evidence adduced at the trial, and there being no transcript of the evidence in the record, they cannot be considered."). Compare OCGA § 5-6-41 (a) (requiring preparation of an official transcript of the evidence and proceedings in all felony criminal cases). However, any party has the right to have, at its own expense, a court reporter present to take down notes and, if needed, to have the reporter transcribe the notes and prepare an official transcript for appeal. See OCGA § 5-6-41 (j). Alternatively,

the parties may agree to terms for the employment and payment of the court reporter, which may give either side the authority to require the reporter to transcribe her notes and prepare an official transcript. See *Harrington*, 224 Ga. at 305. If the case can be appealed to the Supreme Court or Court of Appeals, the trial court also has discretion to order that the proceedings and evidence be taken down by a court reporter and to require the parties to split the reporter's costs equally. See OCGA §§ 5-6-41 (c), 15-14-1.

Once notes of a proceeding have been transcribed, however, the court reporter must certify the transcript and file the original and one copy with the clerk of the trial court. See OCGA §§ 15-14-5, 5-6-41 (e). Upon filing, the transcript becomes a public record that is equally available to all parties. See OCGA § 5-6-41 (e); *Ga. American Ins. Co. v. Varnum*, 182 Ga. App. 907, 907 (357 SE2d 609) (1987).

(b) In the *Harrington* case in 1968, one party contracted with a court reporter to take notes on a trial, with him alone responsible for the reporter's fee; the opposing party "expressly refused to participate" in the agreement with the court reporter; and "the trial court made no order respecting the reporting of the case" under the statutory predecessors to OCGA §§ 5-6-41 (c) and 15-14-1. See 224 Ga. at 305. Under these circumstances, this Court held, the opposing party could not later "compel the reporter to transcribe his stenographic notes even though the [party] offered to pay the entire cost of reporting the case and the cost of transcribing the same." Id.

In 1978, we clarified that in this context, an " '*express*' refusal to participate in the costs" of a court reporter is a refusal that is " '(m)anifested by *direct* and appropriate *language*, as distinguished from that which is inferred from conduct.' " *Giddings v. Starks*, 240 Ga. 496, 496 (241 SE2d 208) (1978) (emphasis added) (quoting Black's Law Dictionary (4th ed. 1968)). Thus, "mere failure to respond to inquiries of the [court] reporter does not amount to an 'express' refusal." Id. In addition, we held that

> in order to invoke the *Harrington* rule a party must make the express refusal known to the judge before trial in order that he may exercise his supervisory role over the proceedings and the reporter. . . . The duties of the reporter are set by law, not by private contract. No private agreement of the reporter and one party can prejudice the rights of the other party to have a transcript of the proceedings prepared. If a party wishes to rely upon the *Harrington* rule, he must invoke *a ruling of the trial judge at the commencement of the proceedings, that his opponent has expressly refused to participate in the costs of reporting.*

Id. at 496-497 (citations omitted; emphasis added).

We explained the reasoning behind these holdings as follows:

> By placing this affirmative burden on the party seeking a forfeiture of the right of his opponent [to a transcript] we intend to avoid the possibility that a party will lose this important right by inadvertence or mistake. Where official notes of the proceedings exists, we are extremely reluctant to hold that one party cannot have a transcript prepared, since a transcript may be necessary for effective appellate review.
>
> The trial court has ample authority to prevent any party from taking advantage of his opponent by failing to agree to pay for the costs of a reporter until after trial (when he can be certain that he needs the transcript). Moreover, we feel there is a greater risk that one party will take advantage of the *Harrington* rule to unfairly deprive his opponent of a transcript if we do not restrict this rule as we have done in this opinion. The abuse of the *Harrington* rule would be far more serious than the abuses relating only to the costs of reporting.

Id. at 497.

In this case, the trial court found in its order on Husband's transcript motion that he made an "intentional and conscious decision" not to participate in the takedown costs based on Husband and his counsel's silence in the face of the court's inquiry about payment of the court reporter at the outset of the trial, and that Husband "expressly refused" to pay when later asked by the reporter after the trial ended and the judge had left the bench. However, the *Harrington* rule, as amplified by *Giddings*, precludes a trial court from finding that a party has waived the ability to obtain an official transcript unless the court makes a ruling "at the commencement of the hearing" that the party "expressly refused," by " 'direct and appropriate language,' " to share in the costs of the takedown. *Giddings*, 240 Ga. at 496-497. Such a waiver may not be "inferred from conduct," such as silence in response to the court's inquiry, nor can it be based on the party's interaction with the court reporter after the trial begins. Id. at 496. Because the trial court here did not rule at the beginning of the trial that Husband had expressly refused to share payment for the takedown, the court erred in denying his request to obtain the transcript, with appropriate payment. See id.

(c) Wife acknowledges the holdings in *Harrington* and *Giddings* but argues for a different outcome here. She seizes on the language

in *Giddings* about avoiding "the possibility that a party will lose this important right by inadvertence or mistake" and the interest in preventing a "party from taking advantage of his opponent by failing to agree to pay for the costs of a reporter until after trial (when he can be certain that he needs the transcript)." 240 Ga. at 497. Wife emphasizes the trial court's express findings that Husband's decision not to share in the takedown costs was not a result of inadvertence or mistake, but instead was "intentional and conscious," and that Husband sought to take advantage of Wife by only agreeing to pay for the costs of the court reporter after he knew that he would need the transcript because of the court's letter indicating how it would rule. Wife also points to three decisions by the Court of Appeals construing the *Harrington* rule, which she says have distinguished *Giddings* on similar grounds. See *BMW Bank of North America v. Short*, 300 Ga. App. 430 (685 SE2d 390) (2009); *Ruffin v. Banks*, 249 Ga. App. 297 (548 SE2d 61) (2001); *Tow v. Reed*, 180 Ga. App. 609 (349 SE2d 829) (1986).

We do not question the trial court's finding that Husband made an intentional decision at the trial to avoid the cost of the court reporter, thereby severely limiting the grounds he could raise on appeal, and so it is true that we need not be concerned in this case about loss of the right to a transcript through inadvertence or mistake. And we certainly do not condone Husband and his counsel's gamesmanship in waiting until after an adverse ruling was announced to invoke the rule of *Harrington* and *Giddings* to obtain a transcript.

Nevertheless, and despite the possible unfairness in this particular case, we decline Wife's invitation to replace the bright-line procedural rule set forth in *Harrington* and *Giddings* with a rule that would require case-by-case inquiry into the losing party's subjective intent based on its conduct, such as not speaking up when payment of the court reporter is discussed. That could spawn collateral litigation in any number of civil cases and result in some parties inadvertently losing their right to a transcript because their silence or conduct is misinterpreted. See *Giddings*, 240 Ga. at 497. The trial court, and litigants in Wife's position, can always prevent gamesmanship simply by ensuring that the court obtains an express refusal by the opposing party to share in the takedown costs at the start of the proceeding. See id. And the court may of course require the party seeking a transcript after the proceeding to pay for it and the court reporter services that produce it, as Husband has offered to do here. See id. As for the Court of Appeals cases that Wife cites, to the extent these decisions are inconsistent with the understanding of

*Harrington* and *Giddings* expressed in this opinion, they are hereby disapproved.[1]

3. Because the trial court erred in denying Husband's motion for a transcript of the trial, he was unable to cite the transcript in support of his challenges to the divorce decree. We therefore remand the case to allow entry of an appropriate order granting Husband a transcript, after which he may seek review of the decree.

4. In light of our holdings above, Husband's Extraordinary Motion for Relief from the order denying his transcript motion is moot, and it is hereby dismissed.

*Judgment reversed and case remanded. Motion dismissed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Hammond & Hammond, John C. Hammond*, for appellant.
*Barry N. Middleton*, for appellee.

---

[1] See *BMW Bank of North America v. Short*, 300 Ga. App. at 432 (affirming denial of a motion to instruct the court reporter to prepare an arbitration transcript even though appellant "never 'expressly' refused to participate in reporting expenses and . . . the arbitrator never ruled on the question"); *Ruffin*, 249 Ga. App. at 299 & n. 5 (affirming denial of a motion to compel the court reporter to prepare a trial transcript, saying that appellant "expressly refused" to participate in the takedown costs at the beginning of the trial and in a pretrial pleading and acknowledging that "silence is not an express refusal," but not mentioning any ruling by the trial court at the commencement of the trial that appellant had expressly refused to participate); *Tow*, 180 Ga. App. at 610 (denying appellant's request to compel appellee to authorize the court reporter to prepare a transcript, based on testimony at a post-trial hearing that appellant declined in open court to participate in the takedown costs, without addressing whether the trial court ruled at the commencement of trial that appellant had expressly refused to participate in the takedown costs). See *Moore v. Center Court Sports & Fitness*, 289 Ga. App. 596, 600, n. 6 (657 SE2d 548) (2008) (recognizing that *Tow* and *Ruffin* appear to have applied the *Harrington* rule without considering *Giddings*'s requirement that there be a ruling by the trial court at the commencement of the proceedings that the losing party expressly refused to participate in the takedown costs).