**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2497. NORMAN v. DOBY.

MILLER, Presiding Judge.

This case arises from Lindsay Norman's petition for a temporary protective order ("TPO") against her husband, Shane Doby, alleging that he followed her, placed her under surveillance or contacted her without her consent for the purpose of harassing and intimidating her. Following a hearing on the petition, a magistrate judge sitting by designation for a superior court judge issued a 12-month TPO. Doby filed a motion for new trial, however, before the trial court ruled on Doby's motion, Norman twice consented to entry of an amended TPO to provide for visitation between Doby and the parties' children. Following a hearing before a superior court judge on Doby's motion for new trial, the trial court found that the evidence was insufficient as a matter of law to support the original unamended protective order.

However, the trial court directed the parties to comply with the visitation provisions of the TPO as amended by the parties' consent. This Court granted Norman's application for discretionary appeal to review the trial court's order on Doby's new trial motion.

On appeal, Norman contends that the trial court erred in (1) finding that the evidence at the original hearing was insufficient as a matter of law; (2) ordering the parties to comply with the amended TPO; and (3) ruling on Norman's motion to seal and exclude the transcript of the original hearing. For the following reasons, we affirm in part and reverse in part the trial court's order.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." (Citation and punctuation omitted.) *Martin v. Woodyard*, 313 Ga. App. 797, 799 (723 SE2d 293) (2012).

So viewed, the evidence shows that Doby and Norman are married and have two children. Norman decided to separate from Doby and moved to Georgia with her children.

In October 2011, Norman filed the petition for a TPO against Doby, alleging that Doby called her 50 times during one weekend that month and sent her 20 to 30

text messages within a 24-hour period. According to Norman, Doby harassed and cursed Norman in most of the text messages. Norman also alleged in her petition that, after she had met Doby to pick up the children following a weekend visitation with him, Doby followed Norman in her car for 10 miles until she pulled into a store parking lot. Norman took the children inside the store for safety, where Doby screamed and cursed at her in front of the children. Following a hearing, the magistrate judge granted Norman's petition for a 12-month TPO, which enjoined Doby from approaching within 250 yards of Norman and her immediate family. Doby subsequently filed a motion for new trial. Prior to the hearing on Doby's motion, Norman filed a motion to exclude and seal the transcript of the hearing on Norman's TPO petition, based on Doby's failure to share in the costs of the take down of that proceeding.

Norman and Doby subsequently entered into two consent amendments to the original TPO. The first consent amendment provided for a 3-hour supervised visit between Doby and the parties' children. Norman and Doby entered into the second consent amendment two days after a temporary visitation order was entered in their pending divorce case. The second consent amendment to the original TPO provided continued and extended visitation between Doby and the children consistent with the

provisions of the temporary visitation order in the parties' divorce case which was pending in Barrow County. Both consent amendments to the TPO provided that all other terms of the original TPO remained in full force and effect.

The trial court heard oral arguments on Doby's motion for new trial, as well as Norman's motion to exclude and seal the transcript of the TPO hearing. Thereafter, the trial court entered an order finding that the evidence was insufficient as a matter of law to support the original TPO. The trial court noted, however, that the parties twice amended the original TPO by consent, and directed the parties to comply with the provisions of the amended orders. However, the trial court struck the last line of each amended consent order that provided that all of the terms and conditions of the original TPO would remain in full force and effect.

1. Norman contends that the trial court erred in finding that the evidence was insufficient to support the original TPO. We disagree.

At the onset, we note that Norman's brief fails to comply with Court of Appeals Rule 25 (c) (1), which states that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." Norman enumerates four separate errors, but she discusses only two of them without following the order of her enumerations of error.

4

Rule 25 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the Rule, [Norman] has hindered the Court's review of [her] assertions and has risked the possibility that certain enumerations will not be addressed. Accordingly to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations.

(Punctuation and footnote omitted.) *Birchby v. Carboy*, 311 Ga. App. 538, 540 (1) (716 SE2d 592) (2011).

A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. The term "contact" shall mean any communication. The term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. The term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

(Citation and punctuation omitted.) *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007). In order to obtain a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence. See OCGA §§ 16-5-94 (e), 19-13-3 (c).

Here, the evidence showed only one occasion in which Doby followed Norman in her car for approximately 10 miles, and then followed her into a CVS store where he screamed and cursed at her in front of their children for approximately five minutes. The evidence also showed that Doby repeatedly called and texted Norman over the course of one weekend and that Norman and the children were afraid. However, Doby testified that calling Norman was the only way he could contact his children.

Doby's testimony arguably supports a finding that Doby initiated the phone calls for a legitimate purpose. Thus, Norman has not shown that the phone calls met the statutory definition of harassing and intimidating conduct which served no legitimate purpose. See *Pilcher*, supra, 282 Ga. at 168 (holding that the petitioners failed to show that the respondent's contacts served no legitimate purpose). Moreover, the single incident in which Doby followed Norman to the CVS store was insufficient to establish the pattern of harassing and intimidating behavior, necessary

6

to support the issuance of the protective order. See *Ramsey v. Middleton*, 310 Ga. App. 300, 302-303 (713 SE2d 428) (2011) (holding that a single incident in a parking lot was insufficient to establish the necessary pattern of harassing and intimidating behavior). Accordingly, the record supports the trial court's finding that the evidence was insufficient to support the original TPO.

2. Norman contends that the trial court erred in ordering the parties to comply with the amended consent orders and modifying those orders without the parties' consent. We agree.

In response to Doby's motion for new trial, and after a hearing, the trial court on April 24, 2012, and again on May 2, 2012, entered orders finding that insufficient evidence supported the original TPO. However, the court specifically ordered the parties' compliance with the visitation-related amendments to the original TPO.

As an initial matter, we note that the first amendment providing for a single day's visitation had expired by its own terms several months prior to the entry of the trial judge's April and May 2012 orders. Thus, the trial court's order requiring the parties to comply with the first amendment was error on its face.

Moreover, with regard to the purported survival of both amendments in the absence of the underlying original TPO, OCGA § 19-13-4 (a) (4) gives the trial court

7

the authority to "establish temporary visitation rights" only upon the granting of a protective order or approval of a consent agreement "to bring about a cessation of acts of family violence." In order for the trial court to grant a protective order, OCGA § 19-13-3 (c) provides that the petitioner first prove the allegations of the petition by a "preponderance of the evidence." Absent proof by a preponderance of the evidence, the statute does not authorize the court to provide any relief whatsoever. Thus, it is axiomatic that where the trial court finds insufficient evidence to support the protective order, it no longer has the authority to impose—or to continue—ancillary relief such as the visitation in the instant case, because the trial court's authority to grant that visitation exists *only* when it has determined that the evidence supports the underlying protective order itself.[1] Since the trial court specifically found on motion for new trial that the evidence was insufficient to support the original TPO, the trial court lacked authority to direct the parties to comply with the provisions of their consent amendments.

---

[1] Further, once a protective order is no longer valid, as in the instant case, neither the superior courts nor law enforcement retain any power to enforce that order. See OCGA § 19-13-4 (d).

8

3. Norman also contends that the trial court erred in allowing Doby to retain a copy of the transcript of the original TPO hearing, after the trial court granted Norman's motion to exclude and seal the transcript. We disagree.

> "In civil cases, a court reporter and official transcript are not generally required, although a transcript may be needed to obtain full appellate review. . . . Once notes of a proceeding have been transcribed, however, the court reporter must certify the transcript and file the original and one copy with the clerk of the trial court. Upon filing, the transcript becomes a public record that is equally available to all parties.

(Citations and punctuation omitted.) *Kent v. Kent*, 289 Ga. 821, 822-823 (2) (a) (716 SE2d 212) (2011). A party who elects at the start of a proceeding to solely bear the takedown costs for preparing a transcript may keep another party from obtaining the transcript if, at the start of those proceedings, the other party expressly refuses to participate in the takedown costs. See *Kent*, supra, 289 Ga. at 823-824 (2) (b); see also *Harrington v. Harrington*, 224 Ga. 305, 305-306 (161 SE2d 862) (1968).

In this case, however, the record shows that both parties declined the option to share in the cost of the takedown at the hearing on the original TPO. The court reporter took notes at the hearing pursuant to superior court policy providing for the takedown of all TPO applications. Following the hearing, the court reporter prepared

9

a transcript and filed it with the clerk's office. Upon filing, the transcript became part of the public record that was equally available to all parties. See *Kent*, supra, at 823 (2) (a). Since Norman did not contract with the court reporter at the beginning of the proceeding to take notes or prepare the transcript, the transcript was a public record, and Norman cannot show that the trial court erred in allowing Doby to retain a copy of the transcript.

*Judgment affirmed in part and reversed in part. Ray and Branch, JJ., concur.*