**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 8, 2019**

# In the Court of Appeals of Georgia

A18A1888. MURPHY v. O'KEEFE.

BARNES, Presiding Judge.

Following a hearing, the trial court granted Kristen O'Keefe's petition for a twelve month stalking protective order ("TPO") against Joseph Patrick Murphy. Per the order, Murphy was enjoined from approaching within 500 yards of O'Keefe and from any direct or indirect contact with her. It is from that order that Murphy appeals, and contends that the trial court erred in issuing the protective order because there was insufficient evidence of stalking.[1] Following our review, we agree and reverse the trial court's judgment.

"In reviewing the sufficiency of the evidence supporting a stalking protective order, we do not weigh the evidence or assess witness credibility, and we construe the

---

[1] O'Keefe did not file a brief in this appeal.

evidence in favor of the findings of the trier of fact." (Citation and punctuation omitted.) *Thornton v. Hemphill*, 300 Ga. App. 647, 647 (686 SE2d 263) (2009). So viewed, the record reveals that at the March 28, 2018 hearing on the petition,[2] 18-year-old O'Keefe, a waitress at a restaurant in Canton, testified that:

> [Murphy] came into my work on Wednesday a couple of weeks ago . . . and tipped me $100. Then on Thursday, he came back and was telling the manager that he tipped me that much money so that I could go out with him. Then he left me a note telling me to call him. Saturday, he came back and was just sitting at the bar and I didn't really feel comfortable with him being there. So we called the police.

O'Keefe further recounted that when the police left, Murphy "got a cab to go home, but he went to Lowes and called my work from Lowes. I answered . . . and he told me I had a pretty voice. Customers were walking in and he handed them a note and the note told me . . . to call him. Then we called the police again." Upon Murphy's

---

[2] O'Keefe's petition alleged that on March 10, 2018, Murphy "knowingly and willfully committed the following acts of stalking under OCGA §§ 16-5-90 et seq. He came in the morning looking for me and I wasn't there. He came back at night and just sat at the bar. He asked me to come talk to me and I said no. He got sent out by police, he left and went to [illegible] to call [me] and then wrote a [me] and gave it [to] a customer to give to me saying to call [him]."

hearsay objection, the police report was not admitted into the record, and there was no other testimony presented at the hearing.

At the conclusion of the hearing, the trial court found that although

> this is a close case. . . [the] preponderance of the evidence is a very low standard. . . I am going to go ahead and issue the stalking order in this case. I do believe that [O'Keefe] was intimidated and uncomfortable by this contact and there was more than one contact after [Murphy] was told to not contact her anymore.

"Pursuant to OCGA § 16-5-94 (a), a person who alleges stalking by another person may seek a restraining order by filing a petition alleging conduct constituting stalking as defined in Code Section 16-5-90." (Punctuation omitted.) *Bruno v. Light,* 344 Ga. App. 799, 801 (1) (a) (811 SE2d 500) (2018). Per OCGA § 16-5-90 (a) (1):

> A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "contact" shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device[.] . . . [T]he term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. . . . [T]he term "harassing and intimidating" means a knowing

3

and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

"[H]arassing and intimidating conduct must be established by, among other things, 'a pattern of harassing and intimidating behavior.'" (Citation omitted.) *State v. Burke*, 287 Ga. 377, 378-379 (695 SE2d 649 (2010).

In order for O'Keefe

to obtain a protective order based on stalking, [she] must establish the *elements* of the offense by a preponderance of the evidence. The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion.

(Citation and punctuation omitted, emphasis supplied.) *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007). See OCGA §§ 16-5-94 (e); 19-13-3 (c).

Here, despite the lower standard of proof, the evidence did not establish that Murphy's actions constituted a pattern of harassing and intimidating behavior which placed O'Keefe in reasonable fear for her safety. By her own testimony, O'Keefe was "uncomfortable" rather than in fear for her safety during her interactions with

Murphy. Moreover, there is no evidence that Murphy was directed to stay away from O'Keefe but did so despite the directive. The trial court concluded at the hearing that "there was more than one contact after [Murphy] was told to not contact her anymore," however O'Keefe never claimed that she told Murphy to stay away from her, and if he was told not to do so by police, there is no evidence of that interdiction in the record. As previously noted, the police report was not admitted into evidence, and neither the officer who talked with Murphy nor the restaurant manager, who had called the police, testified. There is also no evidence that O'Keefe was privy to the conversation between Murphy and the police.

Even construed to support the trial court's imposition of the stalking TPO, O'Keefe did not meet her evidentiary burden of establishing that Murphy's conduct fell within the statutory definition of stalking. See *Martin v. Woodyard*, 313 Ga. App. 797, 798-99 (723 SE2d 293) (2012) (where petitioner did not meet the evidentiary burden to establish stalking, the trial court abused its discretion in issuing a protective order); *Ramsey v. Middleton*, 310 Ga. App. 300, 302-303 (713 SE2d 428) (2011) (evidence admitted at the hearing was clearly insufficient to establish the necessary "pattern" of harassing and intimidating behavior; "witnesses were not called despite it being [petitioner's] burden to furnish the necessary proof of her allegations of

5

stalking"); *Wright v. State*, 292 Ga. App. 673, 676 (665 SE2d 374) (2008) (reversing defendant's conviction of aggravated stalking in part because there was "no evidence that [the alleged victim] was in reasonable fear for her safety").

Thus, in the case, as the trial court's issuance of the TPO based on the offense of stalking is unsupported by the evidence in the record, we must reverse.

*Judgment reversed. McMillian and Reese, JJ., concur*.