## DAVISON *et al. v.* REYNOLDS *et al., et vice versa.*

1. "One who grants a thing is deemed also to grant that within his ownership without which the grant itself will be of no effect." The grant of minerals with the reservation of the surface soil conveys, by necessary implication, the right to enter and remove the minerals, unless the language of the conveyance repels such construction.

(a) The petition showed that the owner of the entire fee conveyed the mineral rights but reserved the surface; that subsequently the grantees of the surface refused and denied to the owners of the minerals the right of passage over the surface necessary to the use and enjoyment of the minerals. Injunction was sought to prevent the interference. The court did not err in overruling the demurrer to the petition, based on the ground that the petitioners had an adequate remedy at law.

2. The verdict finding title to the minerals in the plaintiffs was the only verdict which, under the evidence with all reasonable deductions and inferences, could have been legally returned. The court did not err in directing the verdict and rendering a decree accordingly. That portion of the verdict finding against the injunction was not demanded, and it was error for the court to so direct.

3. Error was assigned on the refusal of the court to allow one of the defendants to testify that one of the plaintiffs verbally offered to buy from said defendant the mineral interests in the land. Under the pleadings and the evidence this ruling will not require a reversal of the judgment in favor of the plaintiffs.

Nos. 1626, 1627. MAY 13, 1920.

Equitable petition. Before Judge Wright. Floyd superior court. July 29, 1919.

*Bunn & Trawick,* for plaintiffs.

*Maddox & Doyal,* for defendants.

GILBERT, J. Davison et al. filed an equitable petition seeking to enjoin the heirs at law of Louis Reynolds from interfering

with their operation in mining manganese ore deposits from described lands. They alleged, that in 1881 Reynolds conveyed the entire mineral interests in the land to Pyrolusite Manganese Company; that that company took actual physical possession of the mineral interests; that by successive conveyances certain of the plaintiffs had acquired these mineral interests and had leased them to another of the plaintiffs, who was prevented from mining the same, because of the refusal of the heirs of Louis Reynolds to permit him to go upon the surface of the land, accompanied by threats of violence. In addition to the injunction sought, the two plaintiffs claiming the mineral interests prayed that the title thereto be decreed to be in them.

1. "Land hath also, in its legal signification, an indefinite extent upwards as well as downwards." Thus wrote Blackstone in his commentaries. 2 Bl. 17. The doctrine was, however, an ancient one. Sir Edward Coke, one of the greatest of English jurists, so stated it in his "Coke upon Littleton," published in the early part of the seventeenth century. Lord Ellenborough gave only a qualified assent in so far as it applied to the superincumbent air space. "The several layers or strata composing the earth's crust are, by virtue of their order and arrangement, subject to reciprocal servitudes; and as these are imposed by the laws of nature, and are indispensable to the preservation and enjoyment of the several layers or strata, to and from which they are due, the courts should recognize and enforce them." Chartiers Block Coal Co. v. Mellon, 152 Pa. 286 (25 Atl. 597, 18 L. R. A. 702, 34 Am. St. R. 645). "Equity will protect the owner of a layer of the earth's crust, and aid him in his right of access to it and in the exercise of such ownership. If it be true that each of the separate layers or strata becomes a subject of taxation, of encumbrance, levy and sale, precisely like the surface, why should the ownership of each successive strata not be clothed with the same attributes as surface ownership and be invested with all things necessary or incident to the right of enjoyment? Each overlying stratum would have the right of support from the lower; all being under a common servitude to the surface owner, and each owner would owe a duty to the other to so conduct his operations as not to interfere with his over or underlying neighbor." 3 Lindley on Mines, 2028. The owner of the entire

interest may sell the surface to A, the stratum of iron to B, the stratum of coal to C, the stratum of oil to D, and a stratum of the air space above. Wallace *v.* Elm Grove Coal Co., 58 W. Va. 449 (52 S. E. 485, 6 Ann. Cas. 140) ; and see McConnell *v.* Pierce, 210 Ill. 627 (71 N. E. 622) ; Hoilman *v.* Johnson, 164 N. C. 268 (80 S. E. 249) ; Lilibridge *v.* Lackawana Coal Co., 143 Pa. 293 (22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. R. 555). Minerals held apart from the surface of land are taxable as a separate estate. Washburn *v.* Gregory, 125 Minn. 491 (147 N. W. 706, L. R. A. 1916D. 304) ; Sanderson *v.* Scranton, 105 Pa. 469. Ejectment will lie for minerals beneath the surface, although the claimant own only the mine without any title to the surface of the soil. *Wachstein* v. *Christopher,* 128 *Ga.* 229, 231 (57 S. E. 511, 11 L. R. A. (N. S.) 917, 119 Am. St. R. 381) ; Adams on Ejectment (Waterman's ed.), 21; Sedgwick & Wait on Trial of Title to Land, § 108 et seq., Warvelle on Ejectment, § 25; 9 R. C. L. 834, § 8, note 1. It has been held that when the minerals in lands have been conveyed separately from the surface, the title to such minerals will not be lost by nonuser (Wallace *v.* Elm Grove Coal Co., supra; see McBeth *v.* Wetnight, 57 Ind. App. 47, 106 N. E. 407), or adverse possession of the surface (Birmingham Fuel Co. *v.* Boshell, 190 Ala. 597, 67 So. 403; see Hoilman *v.* Johnson, supra; Delaware Canal Co. *v.* Hughes, 183 Pa. 66, 38 Atl. 568, 38 L. R. A. 826, 63 Am. St. R. 743), but only by adverse user of the minerals independent of the surface (Birmingham Fuel Co. *v.* Boshell, supra; Kentucky Block Cannel Coal Co. *v.* Sewell, 249 Fed. 840, 847, 162 C. C. A. 74, 1 A. L. R. 556). It is agreed that Louis Reynolds was the common grantor of all the parties to this litigation. In the year 1881 Reynolds owned in fee the entire interest in the property, the surface and the air space above and the minerals below the surface. In October of that year he conveyed by warranty deed, for a valuable consideration, to Pyrolusite Manganese Co. the "entire mineral interest in" the lands in question. By successive conveyances these mineral interests were conveyed by slightly varying language to Davison and his associates, the plaintiffs in the trial court. These facts are undisputed. The equitable petition of the plaintiffs alleges, that, while they own the title to the minerals, the defendants, by threats of violence, have prevented them from exercising their

rights of ownership; that until recently they have been in actual physical possession of the minerals. It is not alleged that any one was in actual possession at the time the suit was filed, nor is it alleged that the defendants are insolvent, nor in terms that the damages are irreparable. It is alleged that "there is no method by which the amount of injury can be accurately computed." The prayers were for injunction against interference with the mining operations, and for decree as to title to the mineral interests. The demurrer raises the question as to the sufficiency of this petition to set out a cause of action. The defendants insist that there is no equity in the petition, because the plaintiffs have an adequate remedy at law by a suit in ejectment and by a suit for damages for any injury resulting from interference on the part of the defendants. The court overruled the demurrer, and we think it properly did so. Damages for depriving the owner of access to minerals covered beneath the earth's surface, so that the quantity and quality cannot be known, and which, therefore, cannot be computed, are irreparable, because no court could award damages which cannot be computed. Insolvency is not the sole test of the right to equitable relief by way of injunction. Under conditions like these solvency or insolvency is an immaterial factor. 14 R. C. L. 453; Kellogg v. King, 114 Cal. 378 (46 Pac. 166, 55 Am. St. R. 74); 1 Beach on Injunctions § 35. The facts of this case as alleged are peculiar. Construed with reference to the demurrer, we find that the plaintiffs are the owners of valuable property rights; that they are prevented from taking physical possession of the same and exercising the rights of ownership by the defendants, because the defendants deny the passage over the surface lands of defendants in order to assume possession. If the defendants were in possession and that were all, the plaintiffs could avail themselves of a suit in ejectment; but they cannot do so when the defendants are not in possession and when the wrong complained of is that they will not permit the plaintiffs to go upon and pass over the surface owned by the defendants, which is necessary to gain access to the minerals. " One who grants a thing is deemed also to grant that within his ownership without which the grant itself will be of no effect." *Muscogee Mfg. Co.* v. *Eagle & Phenix Mills,* 126 *Ga.* 210 (8), 225 (54 S. E. 1028, 7 L. R. A. (N. S.)

1139). As stated in Ruling Case Law, " This is the result of the familiar maxim that when anything is granted all of the means of obtaining it and all of the fruits and effects of it are also granted." 18 R. C. L. 1156, § 66, and note. The grant of minerals with a reservation of the surface soil conveys, by necessary implication, the right to enter and mine and remove the minerals, unless the language of the conveyance repels such construction. Oberly *v.* Frick Coke Co., 262 Pa. 83 (104 Atl. 864, 865) ; Preston County Coke Co. *v.* Elkins Coal & Coke Co., 82 W. Va. 590 (96 S. E. 975). Therefore the court 'did not err in overruling the general demurrers to the petition. The case of *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 830 (51 S. E. 666), is relied on as authority for a contrary view. In that case the surface of the land was conveyed, but all of the granite was reserved. It was said in the opinion that " underlying all of the soil on this land lot was a foundation of granite capable of being quarried; . . it appeared that in quarrying the granite it was necessary to remove the covering soil, and that it was impossible to mine it from beneath the ground like other minerals, and therefore that if the rights of the owner of the soil were subordinated to those of the owner of the granite the result would be practically to deprive the former of all that he was supposed to get under his deed." Accordingly it was held that the owner of the granite had title to all of the mineral on the land, but had no right to disturb the soil for the purpose of removing the granite; he could only use it when, from the washing away of the soil or from other causes, other granite became exposed. This ruling was based upon the familiar principle that " where the ownership of the surface of land and that of the minerals on the land are in different persons, the owner of the surface has an implied right to support, either natural or artificial, for his land." It is generally conceded that the right to mine the minerals under such circumstances must be so exercised as not to remove the subjacent support. Penman *v.* Jones, 256 Pa. 416 (100 Atl. 1043, 1045) ; Berkey *v.* Berwind-White Mining Co., 220 Pa. 65 (69 Atl. 329, 16 L. R. A. (N. S.) 851). The principles ruled in the *Collinsville* case were undoubtedly sound, but the facts of the case differ from those in the case now under consideration. When the grantor in the *Collinsville* case sold the surface of the soil, re-

serving to himself the granite, he also sold the means of obtaining the fruits and effects of such conveyance; and since, under the facts, the granite extended throughout the lot of land, the mining of the granite would practically have destroyed the entire surface. In the instant case the grant is reversed. The grantor sold the minerals for a valuable consideration, reserving to himself the surface; and applying the same principles as we have applied to the *Collinsville* case, the grant carried with the minerals the means of enjoying the fruits and effects of the conveyance. The rule is the same in both instances, but the facts being reversed results in an apparent but not an actual conflict.

2. That portion of the plaintiffs' petition in which it was alleged that the defendants made some sort of claim to the land, but in fact had no interest, would not of itself be sufficient to authorize decretal relief as to title, and would have been subject to a proper demurrer attacking it. A mere verbal claim to or assertion of ownership in property is not such a cloud upon the title of the owner as can be removed by equitable proceedings. The petition did not pray to have any instrument cancelled or any proceedings set aside, and therefore it shows no such cloud upon the title of the plaintiffs as they can have removed. *Waters* v. *Lewis,* 106 *Ga.* 758, 760 (32 S. E. 854); *Weyman* v. *Atlanta,* 122 *Ga.* 542 (50 S. E. 492). The demurrers assailed the petition as a whole, and necessarily failed. The defendants filed an answer in which they prayed for affirmative equitable relief upon their part, including injunction against the plaintiffs, and for general relief, and set up a claim of title to the minerals as well as to the surface of the land, as heirs of their father, Louis Reynolds, who died intestate, and who held title to the entire interest under a written conveyance prior to his conveyance to the Pyrolusite Manganese Co. Upon the issues thus formed both parties introduced evidence, at the conclusion of which the court directed a verdict denying the injunction sought by the plaintiffs, but decreeing title in the plaintiffs to the mineral interests. The plaintiffs excepted to the judgment denying an injunction, and the defendants, by way of cross-bill, excepted to the decree adjudging title to the mining interests in the plaintiffs. The verdict finding title to the minerals in the plaintiffs was the only verdict which, under the evidence with all reason-

able deductions and inferences, could have been legally returned. The court did not err in directing the verdict and in rendering a decree in accordance therewith. That portion of the directed verdict which denied the injunction as prayed for by the plaintiffs was not demanded by the evidence. It was error, therefore, for the court to so direct; and consequently so much of the verdict and the decree based thereon as denied the injunction must be reversed and set aside.

3. The third headnote need not be elaborated.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*