**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-4040 & 15-1964
_____

MICHAEL M. CHOY,
                                        Appellant

v.

COMCAST CABLE COMMUNICATIONS, LLC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-08-cv-04092)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 19, 2015
Before:  FISHER, SHWARTZ and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: October 20, 2015)
_____

OPINION[*]
_____

PER CURIAM

        Michael M. Choy, proceeding pro se, appeals from the judgment entered against

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

him by the United States District Court for the District of New Jersey in an action alleging employment discrimination. We will affirm.

I.

In August 2008, Choy filed a counseled complaint against Comcast Cable Communications, alleging that Comcast fired him in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J. Stat. Ann. § 34:19-1 et seq. The District Court granted Comcast's motion for summary judgment as to the state-law claim but allowed the Civil Rights Act claim to proceed to trial. Following a two-week trial in September 2012, the jury returned a verdict in favor of Comcast. Choy timely appealed pro se, and the matter was docketed here at C.A. No. 12-4040.[1]

We granted Choy's motion for transcripts of the trial. See 28 U.S.C. § 753(f). After the official transcript of the proceedings was prepared and filed, Choy filed in the District Court a "Motion to verify corrupted trial transcripts," seeking "voice recordings . . . of the jury selection trial proceedings . . . to verify the omissions and fictitious additions of the corrupted transcripts." The District Court denied that motion, holding that Choy "present[ed] no evidence of any irregularity in the official transcript."

---

[1] Meanwhile, Choy filed in the District Court a motion for a new trial pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. After holding a hearing, the District Court denied the Rule 60(b) motion by order entered June 9, 2014. Choy appealed and the matter was docketed here at C.A. No. 14-4724. We dismissed that appeal for lack of jurisdiction because Choy's notice of appeal, filed on July 21, 2014, was untimely. See Fed. R. App. P. 4(a)(1). To the extent that Choy's Informal Brief raises challenges to the

2

Accordingly, although Choy could view the stenographic notes, the District Court denied access to the court reporter's personal audio recording. Choy appealed, and the matter was docketed here at C.A. No. 15-1964. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Choy claims that the District Court improperly entered summary judgment in favor of Comcast on his claims under the CEPA. Our review of an order granting summary judgment is plenary. See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).

The purpose of the CEPA is "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Bd. of Educ., 650 A.2d 958, 971 (N.J. 1994). The CEPA is analyzed using the framework for retaliatory discharge claims under Title VII. Caver v. City of Trenton, 420 F.3d 243, 255 n.9 (3d Cir. 2005). To state a prima facie case of retaliation under the CEPA, a plaintiff must show that: 1) he or she reasonably believed that his or her employer's conduct was illegal; 2) that he or

order denying his Rule 60(b) motion, we lack jurisdiction to hear his claims.

3

she performed whistleblowing activity described in CEPA; 3) the employer took adverse employment action against him or her; and 4) a causal connection exists between the adverse employment action and the protected activity. See Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 92 (3d Cir. 1999). The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the employment action, after which it is the employee's burden to demonstrate pretext by a preponderance of the evidence. Klein v. University of Medicine and Dentistry, 871 A.2d 681, 687 (N.J. Super. Ct. App. Div. 2005).

Comcast hired Choy in March 2007 as a Principal Network Engineer to work with a group that was responsible for managing the company's national communications network. Steven Surdam, Choy's principal supervisor, assigned him to a project that involved testing the compatibility of equipment made by two competing vendors, Fujitsu and Cisco. In mid-May 2007, Choy began to express concerns that the project risked disclosing Fijitsu's proprietary information to Cisco.[2] Over a month later, on June 27,

---

[2] Choy claimed that he initially contacted an Executive Secretary at Comcast, who referred him to Susan Sullivan "as the person in Comcast's Colorado Law Office assigned to answer questions concerning intellectual properties." Sullivan informed Choy that there was no non-disclosure agreement between the two vendors, but that he "needed to do a good job of not releasing proprietary information between vendors." Choy alleged that "[a]bout a day later, I told Surdam about the contents of my conversation with Sullivan." In response, Surdam told Choy that it was permissible to take suggestions from the vendors in preparing the test plans, but that he should not share the test results of one vendor's equipment with the other vendor. Additionally, Choy offered his opinions about the tests in an email to Surdam and a Cisco engineer. Choy also declined a Cisco Account Manager's offer to help with the test project. Because, as discussed below, we conclude that Choy has failed to demonstrate causation, we need not address whether these actions constitute protected whistleblowing activity. See Blackburn v. United

2007, Surdam provided Choy with a termination notice. Choy was permitted to continue to work for Surdam's group while he looked for other employment. Choy was terminated on August 15, 2007.

Choy has not established a factual dispute as to whether his termination occurred because of protected activity. To demonstrate causation, a plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision." Donofry v. Autotote Sys., Inc., 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001). Causation may be demonstrated through direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation. Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1143 (N.J. Super. Ct. App. Div. 1995). Choy presented only circumstantial evidence of retaliation, namely, the temporal proximity of his alleged whistleblowing in mid-May 2007 to notice of his termination in late-June 2007. Id. (stating that temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection). Under the circumstances here, this approximately six-week period fails to raise an inference of causation. Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (stating that "[w]e have been reluctant to infer a causal connection based on temporal proximity alone."); see also Thomas v. Town of

Parcel Serv., Inc., 179 F.3d 81, 93-94 (3d Cir. 1999) (disposing of appeal on alternative ground that appellant presented insufficient evidence of pretext to survive summary judgment "rather than engage in a lengthy exegesis" on whether he had engaged in protected whistleblowing activity).

5

Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding a period of three weeks between the time the protected activity occurred and the plaintiff's dismissal did not constitute "unusually suggestive temporal proximity").

In addition, Comcast explained that it fired Choy because of poor performance. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (stating that "[o]nce a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct."). Notably, Surdam identified problems with Choy's work performance *before* Choy first expressed concerns about the disclosure of proprietary information to competing vendors.[3]  See Ross v. Gilhuly, 75 F.3d 185, 193 (3d Cir. 2014) (recognizing that "demonstrably poor job performance" qualifies as a legitimate, nondiscriminatory reason for termination).  Moreover, after Choy was provided with the termination notice, which summarized his performance problems, he was allowed to continue to work for Surdam's group and was given the opportunity to either transfer to another position within Comcast or to look for a job outside the company.  These undisputed facts belie a conclusion that Comcast's reasons for firing Choy were a pretext for retaliation.  Taken together, this evidence does not demonstrate a genuine issue of material fact as to whether Choy was discharged because of his protected activity.  Accordingly, the District Court properly entered summary judgment in favor of Comcast on Choy's CEPA claim.

_____

[3] On May 14, 2007, Surdam emailed the Comcast Human Resources Department, looking to "put a plan in place to try and help" Choy because he "does not appear to be working out at all and I have documented some simple deliverables that he was been unable to

6

Choy also challenges the jury selection process at the trial on his Civil Rights Act claim. In particular, he claims that the District Court failed to question the jurors about their educational levels, summarily dismissed all Comcast subscribers from the venire, and did not adequately screen potential jurors for bias. But Choy, who was represented by counsel at trial, did not raise these claims in the District Court during voir dire. Accordingly, his challenges are waived. See Government of Virgin Islands v. Forte, 806 F.2d 73, 75-76 (3d Cir. 1986) (failure to contemporaneously object at trial and preserve the record constitutes waiver of the argument on appeal); see also 28 U.S.C. § 1867(c) (precluding challenge to a court's compliance with the Jury Selection Act if not made before voir dire or within seven days after the defect should have been known). Even if not waived, Choy's claims are contradicted by the transcript of jury selection. Prospective jurors read aloud answers to a questionnaire, which included an inquiry about their highest level of education. In addition, the District Court did not remove all Comcast subscribers from the venire. Rather, the District Court asked the prospective jurors whether they subscribed to Comcast and whether their experiences with the company, either positive or negative, prevented them from being "fair to both sides." Only one prospective juror was dismissed based on his answer to this inquiry. Finally, many of the District Court's voir dire questions focused on issues of potential bias. For instance, the District Court asked the prospective jurors if they were familiar with the

_____

complete." Choy's performance problems were summarized in the termination notice.

parties, if they had worked in personnel or human resources, if they had been parties to lawsuits or had previously served as jurors, and if they had been fired from jobs. On this record, we conclude that Choy's challenges to the jury selection process lack merit.

IV.

Choy challenges the District Court's denial of his "Motion to verify corrupted trial transcripts," in which he sought "access to 'the voice recordings and the relevant notes of the jury selection trial proceedings dated September 4, 2012 to verify the omissions and fictitious additions to the corrupted transcripts.'" Here, the court reporter created a stenographic record of the jury selection proceeding and backed up that record with an audio recording. Although the District Court granted Choy access to the stenographic notes of the jury selection proceeding, it denied his request for the audio recording.

The Court Reporter's Act requires that proceedings in open court be recorded verbatim, but permits the recording to be done by various methods, including shorthand or electronic sound recording. 28 U.S.C. § 753(b). The Act also requires that the court reporter file with the clerk "the original shorthand notes or other original records." Id. The clerk must "preserve [that material] in the public records of the court for not less than ten years." Id.

The District Court properly denied access to the audio recording, which was merely the court reporter's personal back-up to the stenographic record. Other courts of appeals have held that backup audiotapes should not be deemed judicial records "unless some reason is shown to distrust the accuracy of the stenographic transcript." Smith v.

8

U.S. Dist. Court Officers, 203 F.3d 440, 442 (7th Cir. 2000); see also In re Pratt, 511 F.3d 483, 485 (5th Cir. 2007). Choy claims that the transcript is inaccurate because it does not reflect his recollection that the District Court summarily excused from the jury all Comcast subscribers. But this unsubstantiated assertion is not a sufficient basis upon which to dispute the transcript. Moreover, according to the District Court, "the court reporter has checked his stenographic notes (which are in digital format) and his personal audio recording and confirmed the accuracy of the transcript."[4] Choy also questioned the accuracy of the jury selection transcript because it was provided to him in hard copy format without a billing record, whereas the transcript of the trial was sent to him via email with a notation that it was intended "to save paper printing costs." Choy's receipt of a paper, rather than electronic, copy of the jury selection transcript does not cast doubt on its accuracy. Accordingly, we conclude that the District Court properly denied Choy's request for access to the court reporter's audio recordings of the jury selection proceeding.

V.

For the foregoing reasons, we will affirm the judgment of the District Court.[5]

---

[4] Likewise, the District Court recalled that "[t]here was no wholesale excuse of Comcast subscribers."

[5] We grant Choy's motion to file a supplement to the appendix. See Fed. R. App. P. 10(e)(2)(C).