302 Ga. 418
FINAL COPY

S17A1061.  UNDISCLOSED LLC v. THE STATE.

PETERSON, Justice.

Alexander Hamilton famously observed in Federalist 78 that courts "have neither FORCE nor WILL, but merely judgment." Notwithstanding this general principle, the Georgia Constitution does confer on us some carefully defined room for the exercise of will: it vests in this Court the power to approve rules for each class of court in this State. That is a policymaking power. We can approve or disapprove a proposed rule based on whether we think it's a good idea. But once we've approved a rule, our policymaking role is at an end and Hamilton's observation applies with full force. And so, when a case (like this one) calls us to decide what a rule means, our role is no different than when we interpret the Georgia Constitution or a state statute; we simply determine what the text of the rule meant at the time it was adopted, and apply it accordingly,

without considering whether we like the policy implications that meaning may have.

More than a decade ago, Joseph Watkins was convicted of felony murder and other crimes following a jury trial, and we affirmed Watkins's convictions on appeal. Watkins v. State, 276 Ga. 578 (581 SE2d 23) (2003). In late 2015, Undisclosed LLC, a producer of a legal documentary podcast, began investigating Watkins's case and, as part of that investigation, sought access to audio recordings of several hearings and the trial. Undisclosed filed a motion in Watkins's case under Uniform Superior Court Rule 21 ("Rule 21") to obtain copies of the audio recordings, arguing that our decision in Green v. Drinnon, Inc., 262 Ga. 264 (417 SE2d 11) (1992) held that a court reporter's audio recordings are "court records" under Rule 21 and the rule provided the right to copy court records. The State did not oppose the motion; the trial court denied it to the extent Undisclosed wanted to make copies of the audio recordings, holding Rule 21 did not confer the right to copy. We granted Undisclosed's application for discretionary appeal. Interpreting Rule 21 in the light of the common law right that it preserved, we conclude that the trial court erred: Rule 21 does include a right to copy court records. We nevertheless affirm the trial

court's order because <u>Green</u>'s limited holding does not apply here, and a review of the common law shows that "court records" within the historic right include only those materials filed with the court, which the recording in question was not.

1. *Rule 21 provides the process for non-parties to seek access to court records.*

Rule 21 provides that "[a]ll court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth [in the rule]." The State argues that a Rule 21 motion is not the proper vehicle for a non-party to access court records, and that Undisclosed should have instead sought mandamus. Undisclosed argues that its Rule 21 motion was the proper vehicle. Undisclosed is right.[1] See <u>Merchant Law Firm v. Emerson</u>, 301 Ga. 609, 610 (1) (800 SE2d 557) (2017).

2. *Rule 21's right of public inspection includes the right to copy.*

---

[1] This opinion should not be read as requiring the filing of a Rule 21 motion in order to obtain access to court records, because nothing precludes a trial court clerk from making them available upon request. The necessity of a motion arises, however, when a judge is inclined to seal a record or otherwise prohibit its release or in cases like this one where there is a dispute about whether something qualifies as a court record.

Undisclosed argues that a Rule 21 analysis generally requires a threshold determination of whether the requested material is a court record, a determination Undisclosed contends has been resolved in its favor by our opinion in Green. Undisclosed argues that we need only address whether Rule 21 includes the right to copy, arguing that Rule 21's right of access to court records includes the right to copy them, and so the court erred in concluding that Undisclosed did not have the right to make copies of the court reporter's audio recordings. We first review the trial court's ruling that Rule 21 does not include a right to copy court records, and then consider the import of Green's statement that a court reporter's audio recordings are court records.

(a) *Because Rule 21 is derived from the common law, we construe its text in the light of the common law.*

Whether Rule 21's right of access to court records includes the right to copy is a matter of first impression. Rule 21 expressly states that court records are available for "public inspection," but does not specifically address the ability to copy records. The State asks us to construe the term "inspection" according to its plain and ordinary meaning, as we ordinarily do when construing statutes and court rules. See, e.g., Couch v. Red Roof Inns, Inc., 291 Ga. 359, 364 (1)

4

(729 SE2d 378) (2012) ("[T]he basic rule used by courts across the country is to apply [a] word's ordinary, everyday meaning."); Beneke v. Parker, 285 Ga. 733, 734 (684 SE2d 243) (2009) ("The fundamental rules of statutory construction require us to construe a statute according to its terms [and] to give words their plain and ordinary meaning[.]" (citation and punctuation omitted)); Cuzzort v. State, 271 Ga. 464, 464 (519 SE2d 687) (1999) (evaluating plain meaning of a Uniform Superior Court Rule). The State contends that such consideration will show that the definition of "inspection" — "critical examination" or "official examination or review" — does not include "copy," "duplicate," or "reproduce." See Webster's New World Dictionary 729 (2d College ed. 1980).[2]

But the State's argument ignores that in interpreting the plain meaning of Rule 21, we do not look at the text in isolation. See May v. State, 295 Ga. 388, 391 (761 SE2d 38) (2014). Rather, to determine its meaning, we also consider its context. Smith v. Ellis, 291 Ga. 566, 573 (3) (a) (731 SE2d 731) (2012) ("In construing statutes, however, we do not read words in isolation, but rather in

---

[2] The State also points us to numerous statutory examples where the legislature has made a distinction between "inspect" and "copy."

5

context."). This context includes the immediate context of other provisions of Rule 21 and the other rules. It also includes the broader legal context in which Rule 21 was drafted, including other law that forms the legal background of Rule 21. May, 295 Ga. at 391-392 ("[C]ontext is a primary determinant of meaning. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (citations and punctuation omitted)).

Here, the common law is not only part of the relevant legal background regarding the right of access, it is the mold in which Rule 21 was cast. "It is well settled that the right of access under Rule 21 is coextensive with the common law right of access to court proceedings." Merchant, 301 Ga. at 613 (1) (b) (citing cases). Through Rule 21, the common law remains in effect, and although the common law may be amended, such changes must be clear. See Fortner v. Town of Register, 278 Ga. 625, 626 (1) (604 SE2d 175) (2004) ("The common-law rules are still of force and effect in this State, except where they have been changed by express statutory enactment or by necessary implication." (citation and punctuation omitted)); see also Scalia & Garner, Reading Law: The

6

Interpretation of Legal Texts 318 (2012) ("The better view is that statutes will not be interpreted as changing the common law unless they effect the change with clarity.").

There is no indication that Rule 21 changed the common law in any way at issue here. Indeed, the preamble to the Uniform Superior Court Rules provides:

> It is not the intention, nor shall it be the effect, of these rules to conflict with the Constitution or substantive law, either per se or in individual actions and these rules shall be so construed and in case of conflict shall yield to substantive law.

256 Ga. at 865.[3] The common law right of access was the substantive law when Rule 21 was adopted. Consequently, we construe Rule 21 consistent with the common law. See May, 295 Ga. at 397 ("Where there is limitation by a statute which is capable of more than one construction, the statute must be given that construction which is consistent with the common law." (citation and

---

[3] We note that the preamble became part of the Uniform Superior Court Rules after Rule 21 and other rules were initially adopted. See 256 Ga. at 865 (providing that preamble is adopted effective September 19, 1986); 253 Ga. at 800, 832 (adopting rules). Although the preamble was approved subsequent to the rules, it shows that the rules were not intended to alter substantive law, such as the common law, and therefore provides guidance on the interpretation of Rule 21. Prior to passage of the preamble, we had not interpreted the scope of Rule 21, much less provided an interpretation in conflict with the common law. Even if we had, the preamble would have functioned as an amendment to the rules that returned the scope of Rule 21 to conform to the common law.

punctuation omitted)). With that in mind, we turn to a review of the common law.

(b) *The common law right of access includes the right to inspect and copy.*

The right of access to court records that we consider here is based on the common law and predates the Constitution. See Belo Broadcasting Corp. v. Clark, 654 F2d 423, 429 (5th Cir. 1981). Under the common law, the right of access to *public* records was generally restricted to those persons with a sufficient interest in them, such as those needing the records to prosecute or defend a legal action. See Colscott v. King, 57 NE 535, 537 (Ind. 1900); Ferry v. Williams, 41 NJL 332, 334 (1879); 20 Am. & Eng. Enc. of Law 521-523 (1892); see also Deal v. Coleman, 294 Ga. 170, 183 (2) (b) (751 SE2d 337) (2013) ("[M]ost founding-era English cases provided that only those persons who had a personal interest in non-judicial records were permitted to access them.") (citing McBurney v. Young, 569 U.S. 221, 233 (133 SCt 1709, 185 LE2d 758) (2013)). The right of access to *court* records, however, did not

require a special interest.[4] Instead, the common law provided that the right of access to court records was a right belonging to every individual:

> It has been admitted, from a very early period, that the inspection and exemplification of the records of the King's courts is the common right of the subject. This right was extended by an ancient statute to cases where the subject was concerned against the King. The exercise of the right does not appear to have been restrained until the reign of Charles II, when, in consequence of the frequency of actions for malicious prosecution, which could not be supported without a copy of the record, the judges made an order for the regulation of the sessions of the Old Bailey, prohibiting the granting of any copy of an indictment for felony without a special order, upon motion in open court, at the general jail delivery. This order, it is to be observed, relates only to indictments for felony. In cases of misdemeanor, the right to a copy has never been questioned. But in the United States, no regulation of this kind is known to have been expressly made; and any limitation of the right to a copy of a judicial record or paper, when applied for by any person having an interest in it, would probably be deemed repugnant to the genius of American institutions.

Ex Parte Drawbaugh, 2 App. D.C. 404, 406-407 (D.C. Cir. 1894) (quoting Simon Greenleaf, Treatise on the Law of Evidence, Vol. 1 § 471) (citation and emphasis omitted).[5]

---

[4] The rights of access to public records and court records were historically distinct and separate. Accordingly, the Open Records Act (which regards the right of access to *public* records) is not relevant to the meaning of the right of access to *court* records under Rule 21.

[5] Ex Parte Drawbaugh noted English case law questioning the dubious validity of the "special order" restriction imposed by judges on the grounds that judges lacked the power to alter the law. 2 App. D.C. at 407. But even if the restriction was valid, subjects still could

9

In addition to establishing that every citizen has a right to inspect judicial records, Ex Parte Drawbaugh also demonstrates the parallel right to copy those records.[6] Ex Parte Drawbaugh is not alone in observing that the common law right of access includes the right to copy court records. See Nixon v. Warner Communications, Inc., 435 U. S. 589, 597 (98 SCt 1306, 55 LE2d 570) (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (footnotes omitted)); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F3d 1304, 1311 (11th Cir. 2001) ("Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents."); United States v. Hickey, 767 F2d 705, 708 (10th Cir. 1985) ("We begin by acknowledging the axiom that a common law right exists to inspect and copy judicial records."); United States v. Criden, 648 F2d 814, 819 (3d Cir. 1981) ("The right to inspect and copy,

_____

obtain copies of judicial records in felony cases by making a motion. Id.

[6] The court's reference to "exemplification" meant copying. See Noah Webster, A Dictionary of the English Language 153 (1878) (defining "exemplify" as "(1) To show by example; (2) To make an attested copy of; (3) To prove or show by an attested copy").

10

sometimes termed the right to access, antedates the Constitution."); Brewer v. Watson, 71 Ala. 299, 304 (1882) (a custodian of judicial records is "bound to furnish copies" of judicial records upon payment of any fees, whereas an individual requesting access to other public records must show an interest in the document and that the request is for a legitimate purpose); cf. Clay v. Ballard, 13 SE 262, 263 (Va. 1891) ("The authorities on the subject are very numerous, and they uniformly hold that such a right [to inspect] includes the right, when necessary to the attainment of justice, to take copies."). The State has not identified — nor have we found — any contrary authority.

The right of access to court records serves vital purposes:

> As James Madison warned, "A popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy: or perhaps both. . . . A people who mean to be their own Governors, must arm themselves with the power which knowledge gives." . . . [T]he right of inspection serves to produce an informed and enlightened public opinion. Like the public trial guarantee of the Sixth Amendment, the right serves to safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies.

United States v. Mitchell, 551 F2d 1252, 1258 (D.C. Cir. 1976) (punctuation and footnotes omitted) (quoting Letter from James Madison to W. T. Barry,

11

August 4, 1822, in 9 The Writings of James Madison 103 (Hunt ed. 1910)), reversed on other grounds by Nixon, 435 U. S. 589. A right to read but not copy court records would be of limited use to this purpose. Indeed, the right of access is not complete unless it includes the right to copy. See Whorton v. Gaspard, 393 SW2d 773, 774 (Ark. 1965) ("The right to inspect . . . carries with it the right to make copies, without which the right to inspect would be practically valueless."); Fuller v. State, 17 So2d 607, 607 (Fla. 1994) ("[T]he right to inspect would in many cases be valueless without the right to make copies."); 37 Cent. L. Journal 399 (1893) ("[T]he right of examination must necessarily carry with it the right to make whatever copies or other memoranda are necessary to effectuate the purpose for which the examination is sought, or else the grant of the mere right of inspection is nugatory.").

This line of authority uniformly accepting that the common law right of access to judicial records encompasses a right to copy provides important context for the scope of the right Rule 21 preserved. Consistent with the common law, we conclude that Rule 21's right to "inspect" includes the right to copy, and the trial court erred in ruling otherwise.

12

But our inquiry does not end here, as we may affirm the trial court's judgment if it is right for any reason. See <u>Reed v. Reed</u>, 295 Ga. 574, 578 (761 SE2d 326) (2014). Our review of the common law reveals some tension between it and our statement in <u>Green</u> that a court reporter's audio recordings are court records for purposes of Rule 21. We now take the opportunity to revisit the issue.

3. *"Court records" under Rule 21 include only records filed with the court.*

Although "[a] body of case law has developed around [Rule] 21, . . . only a handful of decisions [have] focused on whether an item constitutes a 'court record'" under the meaning of Rule 21. <u>In re Gwinnett County Grand Jury</u>, 284 Ga. 510, 511 (668 SE2d 682) (2008) (citation omitted). In none of these cases have we expressly defined what constitutes a court record. Rule 21 became effective July 1, 1985. See 253 Ga. 800, 832. In one of our first decisions applying it, we explained that the public's "presumptive right of access" to all court records "includes pre-judgment records in civil cases, and begins when a judicial document is filed." <u>Atlanta Journal & Constitution v. Long</u>, 258 Ga. 410, 413-414 (3) (369 SE2d 755) (1988). Our statement in <u>Long</u> appears

inconsistent with our statement in Green that "[a]n official court reporter's tape of a judge's remarks in open court is a court record." 262 Ga. at 265 (1). The parties disagree about much, but one thing they seem to agree on is that court reporters rarely, if ever, file their audio recordings with the court. It is the transcript of the court proceedings that is the public record of the proceedings once it is filed. See OCGA § 5-6-41 (e) ("Upon filing by the reporter, the transcript shall become a part of the record in the case[.]"); Kent v. Kent, 289 Ga. 821, 823 (2) (a) (716 SE2d 212) (2011) ("Upon filing, the transcript becomes a public document that is equally available to all parties."). So our statement in Green that a court reporter's audio recording, which is not usually filed with the court, appears at odds with our statement in Long that the right of access enshrined in Rule 21 "begins when a judicial document is filed." 258 Ga. at 413-414 (3). To resolve this confusion, we consider what a "court record" was at common law. But the definition of a "court record" at the time Rule 21 was adopted requires us to look beyond the common law, as subsequent statutes may also be relevant.

(a) *The common law understanding of court records was limited to matters enrolled in parchment that provided a history of the case.*

14

Case law and leading common law authorities have defined a court record as a history of the proceedings and actions of the court from the commencement of the suit to its termination. Sir Edward Coke, "one of the greatest of English jurists,"[7] defined court records as

> "memorials or remembrances, in rolls of parchment, of the proceedings and acts of a court of justice, which hath power to hold plea according to the course of the common law;" and are of "such . . . credit and verity as that they admit no averment, plea or proof to the contrary; and if such record be alleged, and it be pleaded that there is no such record, it shall be tried only by itself."

Davidson v. Murphy, 13 Conn. 213, 218 (1839) (quoting Coke on Littleton); see also Noble v. Shearer, 6 Ohio 426, 427 (1834) ("A record is the history of the cause from its commencement, the issuing of the writ, until final judgment is rendered."). Similarly, Sir William Blackstone, the leading authority on the

---

[7] Davison v. Reynolds, 150 Ga. 182, 183 (103 SE 248) (1920).

15

common law,[8] in comparing courts of record (the king's courts) and "others not of record,"[9] stated:

> A court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called *the records of the court*, and are of such high and supereminent authority, that their truth is not to be called in question.

(Emphasis supplied.) 3 William Blackstone, Commentaries on the Laws of England 24 (Robert Bell ed., 1772); see also DeKalb County v. Deason, 221 Ga. 237, 238 (144 SE2d 446) (1965) (citing Blackstone and providing full definition of a "court of record").

As to what was "enrolled in parchment" at common law, the record generally contained at least the following: the most material pleadings, including the original complaint (or writ), answers or responses, and continuances; the verdict if there was a jury trial; and the court's judgment. 3 Blackstone,

---

[8] Bloom v. Illinois, 391 U.S. 194, 198 n. 2 (88 SCt 1477, 20 LE2d 522) (1968) (accepting Blackstone's Commentaries as the most satisfactory exposition of common law); see also Grange Mut. Cas. Co. v. Woodard, 300 Ga. 848, 853 (2) (a) (797 SE2d 814) (2017); Tucker v. Howard L. Carmichael & Sons, Inc., 208 Ga. 201, 203 (1) (65 SE2d 909) (1951).

[9] Only the king's courts had the authority to fine or imprison, while a "court not of record is the court of a private man; whom the law will not [e]ntrust with any discretionary power over the fortune or liberty of his fellow-subjects." 3 William Blackstone, Commentaries on the Laws of England 24-25 (Robert Bell ed., 1772).

Commentaries, p. 317 ("The record is a history of the most material proceedings in the cause . . . in which must be stated the original writ and summons, all the pleadings, the declaration, view or oyer prayed, the imparlances, plea, replication, rejoinder, continuances, and whatever further proceedings have been had; all entered verbatim on the roll, and also the issue or demurrer, and joinder therein."); id. at 378 ("When the jury have delivered in their verdict, and it is recorded in court, they are then discharged."); id. at 395 ("If judgment is not by some of these means arrested within the first four days of the next term after the trial, it is then to be entered on the roll or record."); see also White v. Newton Mfg. Co., 38 Ga. 587, 593 (3) (1869) ("The proceedings which the Clerk should record, and which make up the record, are, the declaration, process, return of service by the sheriff, and other official entries, the plea, verdict, judgment, and all interlocutory orders passed by the Court during the pendency of the case; and in case of a motion for a new trial after verdict, the order nisi, together with any order passed by the Court, setting it down for a hearing in vacation, or adjourning the hearing from time to time; and in case the new trial is granted, all subsequent orders passed by the Court, including the final judgment.").

17

Thus, materials that were filed and enrolled in parchment became the court record at common law.

The filing of a document, while necessary, was not a sufficient condition to make the matter part of the court record at common law. Depositions, exhibits, and other documentary evidence filed in the case, as well as the court's opinions, were not typically considered part of the court record. See Puckett v. Graves, 14 Miss. 384, 391 (1846) ("Every motion made in a cause constitutes part of its history, and is as much a part of the record as the declaration, plea, or judgment. The evidence offered is no part of the record, unless made so by bill of exceptions."); Lenox v. Pike, 2 Ark. 14, 20 (1839) ("Whatever else that is not necessarily enrolled, such, for example, as oral and written testimony, and exceptions taken to the opinion and judgment of the court, constitutes no part of the record, unless they are expressly made so by order of the court, by the agreement of the parties, by demurrer to evidence, by oyer, by bill of exceptions, or by special verdict. These are the usual and only legitimate modes by which matters of fact may be spread upon the record."); Coolidge v. Inglee, 13 Mass. 26, 50 (1816) ("Neither the report of the judge of the proceedings at the trial,

18

nor the reasons given for the opinion of the Court, nor the papers and documents filed in the case, are a part of the record.").

In Williams v. Norris, 25 U.S. 117 (6 LE 571) (1827), the Supreme Court of the United States noted that although a judge's opinion, depositions, and evidence are not generally considered court records, they may be included in the court record if specifically provided. Specifically, the Supreme Court stated:

> Depositions, and exhibits of every description, are papers in the cause, and, in one sense of the word, form a part of the record. In some States they are recorded by direction of law. But, in a jury cause, they constitute no part of the record on which the judgment of an appellate Court is to be exercised, unless made a part of it by bill of exceptions, or in some other manner recognised by law.

Id. at 119.

Our own precedent reflects the common law principle that many documents and other papers filed with or considered by the court are not automatically part of the court record, but that statutes could provide a method for making them so. In Smith v. Burn, 2 Ga. 262, 263 (1847), we examined a statute that required for written evidence to be included in the bill of exceptions in order for the material to be part of the court record, and concluded that certain testimony was not made part of the record because the party did not meet the

19

statutory requirements for creating a bill of exceptions. Although Smith did not

expressly discuss the common law, Smith implicitly recognized the common law

rule that evidence does not form part of the court record, which was limited to

the pleadings, verdicts, and judgments under the common law. Smith also

reflects an understanding that our laws can amend the definition of a "court

record" to include materials in addition to those provided by the common law.

Consequently, with the common law as the backdrop, we must evaluate what

materials were considered to be part of the court record at the time Rule 21 was

adopted.

(b) *"Court record" at the time Rule 21 was adopted meant materials filed with the court.*

As we have already explained, Rule 21 formalized the common law right

of access to court records, and we interpret the rule in the light of that context.

The common law is not the only context we consider, however. See Chan v.

Ellis, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (the meaning of a provision

is often based on context, which includes the constitutional, statutory, and

common law framework). We interpret court rules in the same manner we

interpret other written instruments, which mean now what they meant when they

were enacted. See Warren v. State, 294 Ga. 589, 590 (755 SE2d 171) (2014) (when considering the text and relevant context of the statute, a statute is to be construed as understood at the time of its enactment); Padelford, Fay & Co. v. Mayor and Alderman of City of Savannah, 14 Ga. 438, 454 (1854) ("[T]he Constitution, like every other instrument made by men, is to be construed *in the sense in which it was understood by the makers of it at the time when they made it*. To deny this is to insist that a fraud shall be perpetrated upon those makers or upon some of them." (emphasis in original)).

By the time Rule 21 was adopted in 1985, the General Assembly had statutorily mandated the contents of the formal record of the court. In 1965, the General Assembly enacted the Appellate Practice Act ("the Act"). Ga. L. 1965, p. 18. The Act prescribed the matters that are to appear in a court's record and abolished the process noted in Smith that parties had to create a bill of exceptions in order to make certain materials part of the court record. See Bishop v. Lamkin, 221 Ga. 691 (146 SE2d 769) (1966). Although the Act, as its full name suggests, generally governs the appellate process, it does provide guidance on the scope of the record in the trial court, and distinguishes between that record and the record on appeal.  See, e.g., OCGA §§ 5-6-41 (d) (defining

trial court record); 5-6-37 ("The notice [of appeal] shall set forth . . . a designation of those portions of the record to be omitted from the record on appeal[.]"); 5-6-38 (a) ("The notice of cross appeal shall set forth . . . a designation of any portions of the record or transcript designated for omission by the appellant and which the appellee desires included . . . . In all cases where the notice of appeal did not specify that a transcript of evidence and proceedings was to be transmitted as part of the record on appeal, the notice of cross appeal shall state whether such transcript is to be filed for inclusion in the record on appeal."); 5-6-41 (f) (providing a process by which the parties may seek to correct the record to "conform to the truth" and stating that "[i]f anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court . . . may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record" be transmitted by the clerk of the trial court).

Turning to the materials that the Act includes in the court's record, the

Act, as it existed at the time of Rule 21's adoption,[10] provided:

> Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, all evidence — whether admitted or stricken on objection or otherwise — copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question on appeal or other post-trial procedure shall be reported, and where the report is transcribed, all such matter shall be included in the written transcript, it being the intention of this act that all these matters appear in the record, rather than in assignments of error on appeal or otherwise, which are abolished by this Act. Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made and included as a part of the record. The transcript of proceedings shall not be reduced to narrative form unless by agreement of counsel, but where the trial is not reported or the transcript of the proceedings for any other reason is not available and the evidence is prepared from recollection, it may be prepared in narrative form.

Ga. L. 1965, pp. 18, 24-25, § 10 (d) (codified at OCGA § 5-6-41 (d)). The Act

also provided that the transcript becomes part of the record in the case upon

filing by the court reporter, and outlined a procedure for the parties to correct

any alleged misstatements or omissions in the transcript or record or to create

---

[10] OCGA § 5-6-41 was amended in 1993, after the adoption of Rule 21, with mostly stylistic changes. See Ga. L. 1993, p. 1315, § 1.

23

a stipulated statement of facts in lieu of a transcript. Id., pp. 25-26, § 10 (f)-(i). With the passage of the Act in 1965, the General Assembly thus provided that all motions, colloquies, objections, rulings, and evidence are to be reported and are to appear in a court's record, and that a transcript filed by the court reporter is also included in the court record. Id., pp. 18, 24-25, § 10 (d) ("it being the intention of this act that all these matters appear in the record"). Categorizing this list of items, we can see the materials required to be made part of the record by the Act are those items that reflect requests for the court to take action (motions and objections) or are central to or reflect any adjudicative action (evidence, filed transcripts, colloquies, and rulings). Notably, by their very nature, all of these items become court records only upon filing with the court.

Because the Act relates to a subject matter at issue here — what is reported in a court record and, thus, made public — we construe Rule 21's use of the phrase "court record" consistent with the meaning of court record supplied by the Act.[11] See Willis v. City of Atlanta, 285 Ga. 775, 776 (2) (684

---

[11] We note that in 1978, before enactment of Rule 21, the General Assembly provided a different definition of a "court record" as part of the Georgia Records Act. See Ga. L. 1978, pp. 1372, 1375, § 4 (codified in OCGA § 50-18-91 (2)). That definition is expansive, departs dramatically from the common law and the Act's definitions we have discussed, and may well cover the audio recordings at issue here. The Georgia Records Act, however, merely

SE2d 271) (2009) (statutes relating to the same subject matter must be construed together).

Construing the term "court record" as used in Rule 21 to be consistent with the Act's definition of a court's record does not alter the fundamental meaning of the common law definition of a court record. Rather, it only supplements the common law. The common law definition of a court record was that which provided a history of the court's actions and proceedings. The Act merely requires a more expansive and detailed account of the court's actions, but it results in a history of the court's actions just the same. More significant for these purposes, both the common law and the Act reflect the same basic principle: for something to be a court record, it must be filed with the court.

In the light of all this context, then, a "court record" for Rule 21 purposes includes those materials that set forth the cause of action (pleadings), reflect requests for the court to take action (motions and objections), are an adjudicative action (rulings, judgment, orders), or are central to such rulings (evidence, filed transcripts, and colloquies). All of these items must be on file with the court

governs state agency record retention and, unlike the Act, does not address what is made available for public access and, thus, does not concern the subject matter at issue in this case.

before becoming a court record. See, e.g., OCGA § 5-6-41 (e) (only upon filing does the transcript become part of the record). This is in accord with what we said in Long that the right of access begins when a "judicial document is filed." Long, 258 Ga. at 413-414 (3).

Defining the scope of a "court record" to require filing with the court is also consistent with conclusions drawn by other jurisdictions that have considered the right of access derived from the common law. Materials admitted into evidence, that call for court action, or play a central role in the adjudicative process are part of the judicial record, so long as such materials are on file with the court. See, e.g., United States v. Amodeo, 44 F3d 141, 145 (2d Cir. 1995) ("[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."); Republic of Philippines v. Westinghouse Elec. Corp., 949 F2d 653, 660 (3d Cir. 1991) (noting decisions that have concluded court records to be transcripts of a civil trial, exhibits admitted at trial, settlement documents filed with the district court, and transcripts of hearings, and ruling that materials filed with summary judgment motion were court records because it was a motion for relief that would have disposed of the case); In re Alexander Grant

& Co. Litigation, 820 F2d 352, 355 (11th Cir. 1987) (right of access extends to "pleadings, docket entries, orders, affidavits or depositions duly filed" but not to documents collected during discovery (emphasis omitted)); F.T.C. v. Standard Fin. Mgmt. Corp., 830 F2d 404, 410 (1st Cir. 1987) (financial statements referred to in a proposed consent decree were public records because they were material filed and considered by court in its approval of decree); State v. Komisarjevsky, 25 A3d 613, 622 (Conn. 2011) ("A judicial document is any document filed that a court reasonably may rely on in support of its adjudicatory function[.]" (citation and punctuation omitted)); Commonwealth v. Long, 922 A2d 892, 898 (Pa. 2007) ("Documents that are filed with the court and, in particular, those that are used by the judge in rendering a decision are clearly considered public judicial documents.").

Given the Act's directives about what is to appear in a trial court's record and the cited authority defining "court records" for which the common law right of access applies, we conclude that the right of access under Rule 21 applies only to those materials that are filed with the court.

4. *The court reporter's audio recordings in this case are not court records.*

(a) *Because the recordings are not filed with the court, they are not court records under Rule 21.*

The audio recordings at issue here are not court records under the definitions established above because they were not filed with the court. And, indeed, they rarely are; court reporters use the recordings (which they are not legally required to create in the first place) to prepare the transcript. It is the transcript itself, not any recordings or notes made by the court reporter, that becomes part of the court record that is reported. See OCGA § 5-6-41 (e) ("Upon filing by the reporter, the transcript shall become a part of the record in the case and need not be approved by the trial judge."); Kent, 289 Ga. at 823 (2) (a) ("Upon filing, the transcript becomes a public document that is equally available to all parties.").

Our conclusion that a court reporter's recordings not filed with the court are not court records is in accord with other courts that have considered the issue. Federal courts of appeals have denied access to audiotapes, ruling that the recordings should not be deemed judicial records, although they may be made available if "some reason is shown to distrust the accuracy of the stenographic transcript." Smith v. U. S. Dist. Court Officers, 203 F3d 440, 442 (7th Cir.

28

2000) (backup tapes are not an original record of proceedings, nor are they filed with the court); see also Choy v. Comcast Cable Communications, LLC, 629 Fed. Appx. 362, 366 (3d Cir. 2015); In the Matter of Pratt, 511 F3d 483, 485 (5th Cir. 2007). Under these authorities, a court reporter's audio recordings are not court records.[12]

(b) *Green holds that a court reporter's audio recordings are court records available for public access only under limited circumstances not present here.*

Undisclosed relies on Green as authority that the audio recordings are court records that it has the right to access under Rule 21. But Undisclosed confuses a stray sentence of the opinion with our holding in that case. In Green, a state court judge "made opening remarks . . . after court was called into session but before the call of any case." 262 Ga. at 264. The remarks were recorded by the court reporter, but were not transcribed as part of any case. The local

---

[12] Our ruling here does not preclude a party from accessing a court reporter's audio recordings in some situations. The Act provides a party who believes that the transcript "does not truly or fully disclose what transpired in the trial court" with the ability to correct the transcript, and the matter would be set for a hearing. See OCGA § 5-6-41 (f). Nothing in the Act would preclude a party from filing a subpoena to obtain the recordings for the purpose of correcting the transcript. The audio recordings may be relevant and material to the issue of what transpired at court and complying with a subpoena for the recordings would not generally be oppressive. See Price v. State, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998) (trial court erred in quashing subpoena for documents that were relevant to issue because complying with the subpoena was not unreasonable and oppressive).

newspaper requested a transcript of the remarks, which the judge denied. The newspaper then sued the judge in superior court, asserting claims to the court reporter's tape under both the Open Records Act and the right of access to court records under Rule 21. The superior court ruled for the newspaper, requiring provision of the tape to the paper. We disapproved the trial court's ruling to the extent that it relied on the Open Records Act, id. at 265 (2), but affirmed on other grounds.

In ruling for the newspaper, we stated initially that "[a]n official court reporter's tape of a judge's remarks in open court is a court record." Green, 262 Ga. at 265 (1). It is this statement that Undisclosed focuses on. But Green did not stop there, and its additional explanation of that statement demonstrates that Undisclosed confuses the opinion's broad phrasing with our actual holding. After quoting as the sole support for our holding R. W. Page Corp. v. Kilgore, 257 Ga. 179 (356 SE2d 870) (1987), a case about a transcript (not a tape) of an inquest by a coroner (not a court), we went on to articulate our holding more precisely:

> Judge Green waived any right to claim that the tape of his comments is not a court record when he made public comments from the bench that were recorded while court was in session. No

> law limits public access to the judge's taped comments nor can access to them be denied under the procedure set out in Rule 21, which he has not invoked. Therefore, the tape *or* its transcript must be made available for public inspection under Rule 21.

Green, 262 Ga. at 265 (1) (emphasis supplied).

We must consider Green in the context of its own unique facts and the facts of the sole authority it relied upon for its holding (Kilgore, a case about transcripts), as well as the total absence of any discussion of the meaning of the text of Rule 21. See Johns v. League, Duvall & Powell, 202 Ga. 868, 873 (1) (45 SE2d 211) (1947) ("[A] decision is to be treated as a precedent . . . on the facts as the court construed or assumed them to be for the purpose of decision."); see also Cohens v. Virginia, 19 U.S. 264, 399 (6 Wheat. 264, 5 LE 257) (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."); Natson v. United States, 494 Fed. Appx. 3, 5 n. 2 (11th Cir. 2012) ("The opinions of the Supreme Court are not the United States Code. Every sentence in a Supreme Court opinion is not law. Only the holdings of Supreme Court

decisions are law."). Had we held in <u>Green</u> that court reporter tapes *always* are court records under Rule 21, then the newspaper would have been entitled to the tapes. But instead we said that the newspaper was entitled to the tapes *or* a transcript. Considered in that context, it is plain that <u>Green</u> did not decide whether court reporter tapes are always court records as that term is used in Rule 21; rather, it simply decided that the only available record of the judge's public comments made "from the bench . . . while court was in session" but not in relation to any case was, indeed, open to the public under Rule 21.

Of course, at common law, court records are only those documents filed with the court. But our law presumes that a transcript of each case's proceedings in open court will be created and filed, and upon filing become the publicly available record of those proceedings. <u>Green</u> confronted the rare occasion on which a judge makes public comments from the bench in open court, but there is no case in which to file a transcript. As a result, a member of the public would have no ability through Rule 21 to request access to a transcript of those statements. <u>Green</u>, therefore, is properly understood only as providing a solution to that unique circumstance.

Properly understood, <u>Green</u> does not apply here; there is a filed transcript of the proceedings for which Undisclosed seeks the court reporter's tapes. Accordingly, the tapes Undisclosed seeks are not court records under Rule 21. We affirm the trial court's order.

<u>Judgment affirmed. All the Justices concur, except Melton, P. J., who concurs specially, and Grant, J., who concurs in judgment only as to Division 4 (b).</u>

MELTON, Presiding Justice, concurring specially.

While I agree with the end result reached by the majority, I also believe that the majority did not have to go to the lengths that it did to distinguish the instant case from Green v. Drinnon, Inc., 262 Ga. 264 (417 SE2d 11) (1992) in order to reach the proper result. Nor am I convinced by the distinction. In my view, Green was simply wrongly decided and should be overruled.

Specifically, pursuant to Uniform Superior Court Rule 21, "[a]ll court *records* are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth [in the rule]." (Emphasis supplied.) The judge's tape-recorded comments in Green were made "after court was called into session but *before the call of any case*." (Emphasis supplied) Green, supra, 262 Ga. at 264. The comments were not part of the official court record of any case. Nor were the comments transcribed or the tapes themselves made a part of any official court record. For these reasons, I believe that Rule 21, which is applicable to court "records," simply cannot be read so broadly as to reach tapes such as those of the judge's comments in Green that were not transcribed and that were not made a part of the official record of any court case.

2

Accordingly, I believe that the broad statement in <u>Green</u> that "[a]n official court reporter's tape of a judge's remarks in open court is a court record" is wrong. <u>Green</u>, supra, 262 Ga. at 265 (1). Under the circumstances presented in <u>Green</u>, the tapes were not court records and should not have been subject to public inspection, at least not pursuant to Rule 21.

Because <u>Green</u> was wrongly decided, this Court should overrule it rather than go to strained and unnecessary lengths to distinguish it from the instant case.

Decided October 30, 2017.

Access to court records. Floyd Superior Court. Before Judge Sparks.

Caplan Cobb, Michael A. Caplan, James W. Cobb, Sarah Brewerton-Palmer, for appellant.

Leigh E. Patterson, District Attorney, John F. McClellan, Jr., Assistant District Attorney; Clare M. Gilbert, for appellee.

Stuckey & Manheimer, Hollie G. Manheimer, amicus curiae.