303 Ga. 828
FINAL COPY

S17G1676.  CAMPAIGN FOR ACCOUNTABILITY v. CONSUMER
CREDIT RESEARCH FOUNDATION.
S17G1677.  BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA v. CONSUMER CREDIT RESEARCH FOUNDATION.

NAHMIAS, Justice.

In this case, the Court of Appeals held, based on its reading of this Court's decision in Bowers v. Shelton, 265 Ga. 247 (453 SE2d 741) (1995), that Georgia's Open Records Act (ORA) *prohibits* the disclosure of all information that is  not *required* to be disclosed based on the ORA exemptions listed in OCGA § 50-18-72 (a).  See Consumer Credit Research Foundation v. Bd. of Regents of the Univ. System of Ga., 341 Ga. App. 323, 329 (800 SE2d 24) (2017).  We granted a writ of certiorari to address that issue, and as explained below, we now disapprove the Court of Appeals' broad reading of Bowers and reverse the court's judgment.

1.     In November 2013, the Consumer Credit Research Foundation (CCRF) entered a consulting agreement with the Kennesaw State University

Research and Service Foundation under which Dr. Jennifer Lewis Priestley, a professor at Kennesaw State University (KSU), would research the effects of payday loans on the financial health of their consumers. As part of this project, Dr. Priestley — but not KSU or the KSU foundation — signed a confidentiality agreement with CCRF agreeing not to disclose any information "relating in any manner to CCRF or CCRF's contributing sponsors." Dr. Priestley published an article about her findings in December 2014.

In June 2015, the Campaign for Accountability (CFA) sent a request to KSU under Georgia's so-called Open Records Act, see OCGA §§ 50-18-70 to 50-18-77,[1] asking for copies of all correspondence, electronic or otherwise, between Dr. Priestley and a number of organizations and individuals, including CCRF and its chairman and CEO. The request explained that CFA sought the information "to educate the public about the true financial interests behind purportedly academic studies claiming payday loans do not pose a financial harm to borrowers." After KSU notified CFA and CCRF that it intended to disclose the requested records subject to possible redactions, CCRF filed a

---

[1] This article of the Georgia Code is actually entitled "Inspection of Public Records," but it has long been referred to as the Open Records Act. See Bowers, 265 Ga. at 247-248.

complaint in superior court against the Board of Regents of the University System of Georgia (the Board), because KSU is part of the university system. CCRF amended its complaint in April 2016. CCRF sought a declaratory judgment that the records requested by CFA are exempt from disclosure under OCGA § 50-18-72 (a) (35) and (36) and a permanent injunction prohibiting the Board from disclosing the records. The trial court granted CFA's motion to intervene in the case as a party defendant.

In May 2016, all three parties moved for summary judgment. After a hearing on August 11, the trial court granted summary judgment to the Board and CFA on August 19. The court ruled that the Board could choose to disclose the requested records even if disclosure was not required by the Open Records Act; the court did not decide whether the requested records actually fell within any disclosure exemption. The court also granted a stay to prevent disclosure of the records until any appeal was resolved. CCRF appealed.

In May 2017, the Court of Appeals issued its opinion, which concluded:

> [I]n light of the Supreme Court's decision in Bowers, the trial court erred in ruling that KSU had the discretion to release the research correspondence in response to CFA's open record request, even if [CCRF] brought suit to enjoin the disclosure and demonstrated that the correspondence was exempt from disclosure

under OCGA § 50-18-72 (a) (35) or (36). Rather, pursuant to the analysis and reasoning of the Bowers decision, [CCRF] was entitled to enjoin KSU from disclosing the research correspondence to the CFA, if [CCRF] showed that the correspondence fell within one or both of the research exceptions found in the Open Records Act.

Consumer Credit Research Foundation, 341 Ga. App. at 329. The Court of Appeals therefore vacated the trial court's order and remanded the case for the trial court to determine whether an exemption applied to bar disclosure. See id. CFA and the Board filed petitions for certiorari, which this Court granted.

2.    Under our State's Open Records Act, "[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a). Government agencies therefore have a duty to disclose public records unless relieved of that duty by a specific exemption or court order.[2] Many of the exemptions from disclosure provided by law are found in OCGA § 50-18-72 (a), which says: "Public disclosure shall not be required for records that are: . . . ," followed by a list of over 50 enumerated types of records.

On that list are two exemptions dealing with certain records collected or

---

[2]  The Open Records Act defines the government agencies covered by its provisions in OCGA § 50-18-70 (b) (1).

4

produced "in the conduct of, or as a result of, study or research" by certain state agencies and affiliated individuals, including state universities and their faculty members. OCGA § 50-18-72 (a) (35) & (36).[3] CCRF argues that because the records CFA seeks are covered by these open records exemptions in OCGA § 50-18-72 (a), the Board cannot disclose the records. Our analysis will proceed, as the trial court's did, on the assumption that the requested records fit within one or both of these OCGA § 50-18-72 (a) exemptions.

CCRF contends that the phrase "*exempted* from disclosure" in OCGA § 50-18-71 (a) means "*prohibited* from disclosure," and that "disclosure *shall not*

---

[3] Paragraphs (35) and (36) of OCGA § 50-18-72 (a) say in full:

(35) Data, records, or information of a proprietary nature produced or collected by or for faculty or staff of state institutions of higher learning, or other governmental agencies, in the conduct of, or as a result of, study or research on commercial, scientific, technical, or scholarly issues, whether sponsored by the institution alone or in conjunction with a governmental body or private concern, where such data, records, or information has not been publicly released, published, copyrighted, or patented;

(36) Any data, records, or information developed, collected, or received by or on behalf of faculty, staff, employees, or students of an institution of higher education or any public or private entity supporting or participating in the activities of an institution of higher education in the conduct of, or as a result of, study or research on medical, scientific, technical, scholarly, or artistic issues, whether sponsored by the institution alone or in conjunction with a governmental body or private entity, until such information is published, patented, otherwise publicly disseminated, or released to an agency whereupon the request must be made to the agency. This paragraph shall apply to, but shall not be limited to, information provided by participants in research, research notes and data, discoveries, research projects, methodologies, protocols, and creative works[.]

5

*be required*" as used in OCGA § 50-18-72 (a) means "disclosure *shall be prohibited*." Reading the statutory text as CCRF suggests would be contrary, however, to the English language. See <u>Smith v. Northside Hosp.</u>, 302 Ga. 517, 521 (807 SE2d 909) (2017) ("In construing a statute, 'we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.'" (citation omitted)). In a legal context, "exempt" ordinarily means "not subject or bound by a rule, obligation, etc. applying to others," Webster's New World College Dictionary 497 (4th ed. 2007), that is, freed from an otherwise binding obligation. "Require" means "to demand by virtue of a law, regulation, etc.," id. at 1219, so *"not* required" similarly means freedom from what is otherwise demanded by law. "Prohibit," by contrast, means "to forbid by law or by an order," id. at 1147, that is, to eliminate freedom of action. Thus, being "exempted" from a disclosure requirement or "not required" to disclose provides a freedom that is contrary to being "prohibited" to disclose.

A few examples illustrate the ordinary usages of these words. Patriotic women who were *exempt* from the draft were not *prohibited* from volunteering

6

for military service. Owners of vehicles that are *exempt* from emissions testing requirements are not *prohibited* from testing their vehicles' emissions. If a teacher tells his students that an extra credit assignment is not *required*, a student who completes the work would be quite annoyed if the teacher rejected it as *prohibited*. And a daughter surprising her father with a birthday visit after he had told her that a visit was not *required* would be rather confused if she found the door barred by her angry father shouting that she should have understood that her visit was *prohibited*. Read naturally and reasonably, OCGA §§ 50-18-71 (a) and 50-18-72 (a) do not prohibit disclosure of records simply because those records are not required to be disclosed by a specific exemption from the ORA's general disclosure duty.

CCRF next maintains that we must adopt its interpretation of OCGA § 50-18-72 (a) because it is well understood that at least some of the records included in the OCGA § 50-18-72 (a) exemptions cannot be lawfully disclosed. And, CCRF argues, what applies to one exemption must be applied to all, meaning that every record that comes within an OCGA § 50-18-72 (a) exemption cannot be disclosed. CCRF points to paragraph (a) (1) — the very first exemption listed in OCGA § 50-18-72 — which applies to records that are "[s]pecifically

7

required by federal statute or regulation to be kept confidential." CCRF asserts that if we conclude that an agency may, in its discretion, disclose records covered by the OCGA § 50-18-72 (a) exemptions, we would be concluding that records required to be kept confidential by federal statutes and regulations can instead be legally disclosed. That is true only in this limited sense: OCGA § 50-18-72 (a) (1) does not prohibit disclosure of the records to which it applies, so an agency that decides to release documents that a federal statute or regulation requires to be kept confidential would not violate the *Open Records Act*. The agency would, however, violate the *federal statute or regulation*. The fact that the Georgia statute does not add an *extra* prohibition on top of the federal statute or regulation does not create any conflict or inconsistency with the federal law. The same is true of other OCGA § 50-18-72 (a) exemptions that invoke the confidentiality requirements of other laws, like the tax statute discussed below in relation to Bowers.

CCRF also argues that if the ordinary understanding of "shall not be required" is applied to OCGA § 50-18-72 (a), it would render other language in the statute surplusage. See Beneke v. Parker, 285 Ga. 733, 734 (684 SE2d 243) (2009) (explaining that courts should "avoid a construction that makes some

8

language mere surplusage"); <u>Berryhill v. Ga. Community Support & Solutions</u>, 281 Ga. 439, 441 (638 SE2d 278) (2006) ("Courts should give a sensible and intelligent effect to every part of a statute and not render any language superfluous."). CCRF points to language in OCGA § 50-18-72 (a) (16), which deals with agricultural or food system records that are part of the critical infrastructure, and (17), which deals with confidential records of the national animal identification system. Each of these paragraphs includes a proviso that "nothing in this paragraph shall prevent the release of such records, data, or information to another state or federal agency if the release . . . is necessary to prevent or control disease or to protect public health, safety, or welfare."[4] These

---

[4] In full, these paragraphs say:

(16) Agricultural or food system records, data, or information that are considered by the Department of Agriculture to be a part of the critical infrastructure, provided that nothing in this paragraph shall prevent the release of such records, data, or information to another state or federal agency if the release of such records, data, or information is necessary to prevent or control disease or to protect public health, safety, or welfare. As used in this paragraph, the term "critical infrastructure" shall have the same meaning as in 42 U.S.C. Section 5195c (e). Such records, data, or information shall be subject to disclosure only upon the order of a court of competent jurisdiction;

(17) Records, data, or information collected, recorded, or otherwise obtained that is deemed confidential by the Department of Agriculture for the purposes of the national animal identification system, provided that nothing in this paragraph shall prevent the release of such records, data, or information to another state or federal agency if the release of such records, data, or information is necessary to prevent or control disease or to protect public health, safety, or welfare. As used in this paragraph, the term "national animal identification program" means a national program intended to identify animals and track them as they come into contact with

9

grants of express authority to release records are needed, however, because the final sentences of these paragraphs say that such critical infrastructure and national animal identification system records "shall be subject to disclosure only upon [a court] order." Thus, these paragraphs are different from most of the other exemptions in OCGA § 50-18-72 (a) — including (a) (35) and (36) — because they have language expressly *prohibiting* disclosure without a court order. The express grant of discretion to disclose certain records to other government agencies in limited circumstances is necessary to allow such disclosure. In other words, disclosure of the records covered by paragraphs (a) (16) and (17) is prohibited not because they are one of the more than 50 types of records for which "[p]ublic disclosure shall not be required," but because the language of those particular paragraphs expressly prohibits disclosure without a court order, unless the disclosure fits within the limited grant of discretion to disclose to another government agency.

Express disclosure prohibitions are found in a couple other OCGA § 50-

_____

or commingle with animals other than herdmates from their premises of origin. Such records, data, or information shall be subject to disclosure only upon the order of a court of competent jurisdiction[.]

OCGA § 50-18-72 (a) (16) & (17).

10

18-72 (a) exemptions as well, supporting the conclusion that such prohibitions do not automatically apply to every exemption in the list. See OCGA § 50-18-72 (a) (5) ("Georgia Uniform Motor Vehicle Accident Reports shall not be available in bulk for inspection or copying by any person absent a written statement showing the need for each such report pursuant to the requirements of this Code section."), (34) ("[T]he agency shall withhold [certain trade secret] records."). If saying that records are not required to be disclosed was meant to prohibit their disclosure, these express prohibitions would be surplusage.[5]

Finally, OCGA § 50-18-71 (d) says:

> In any instance in which an agency *is required to or has decided to withhold* all or part of a requested record, the agency shall notify the requester of the specific legal authority exempting the requested record or records from disclosure by Code section, subsection, and paragraph within a reasonable amount of time not to exceed three business days . . . .

---

[5] Further supporting this interpretation of OCGA § 50-18-72 are two provisions outside subsection (a) that also expressly prohibit disclosure without a court order. See OCGA § 50-18-72 (c) (1) ("[A]n exhibit tendered to the court as evidence in a criminal or civil trial shall not be open to public inspection without the approval of the judge. . . ."), (d) (prohibiting public inspection except by court order of "[a]ny physical evidence that is used as an exhibit in a criminal or civil trial to show or support an alleged violation of [child sex offenses]"). We note that the Open Records Act has not been applied to court records. See Undisclosed LLC v. State of Ga., 302 Ga. 418, 422 n.4 (807 SE2d 393) (2017); Green v. Drinnon, Inc., 262 Ga. 264, 264 (417 SE2d 11) (1992).

11

(Emphasis supplied.)[6]  If agencies were *required* to withhold every record that is exempted from disclosure, there would never be an occasion where they could "*decide* to withhold" a record.  This provision makes sense, however, if the many provisions of OCGA § 50-18-72 (a) that do not themselves expressly prohibit disclosure are read, consistent with their text, to merely exempt the records they cover from mandatory disclosure.   Accordingly, the surplusage canon actually weighs against CCRF's view of the ORA.

3.  The existence of express prohibitions against disclosure of certain government records in the Open Records Act and in other state and federal laws is important to understanding why CCRF's next argument fails. CCRF contends that the Court of Appeals was correct in concluding that under this Court's decision in Bowers, 265 Ga. 247, the records at issue in this case cannot be disclosed. Although Bowers used some imprecise language that understandably led the Court of Appeals astray, that opinion does not mandate the linguistic

---

[6] Notably, with the exception of certain trade secrets, see OCGA § 50-18-72 (a) (34), the Open Records Act does not reciprocally require that an agency notify any third party that may have an interest in records *not* being disclosed when the agency has decided to disclose those records pursuant to an open records request.  In this case, KSU notified CCRF before disclosing the records that CFA requested, which allowed CCRF to run to court seeking to enjoin the disclosure; we do not know from the record if that was a gratuitous notice or somehow connected to the confidentiality agreement with Dr. Priestly.

12

contortion of the Open Records Act that would be necessary to reach the result CCRF seeks.

As in this case, the petitioners in Bowers sought to enjoin a state agency from disclosing information about them that had been requested by another party under the ORA. See 265 Ga. at 248. Unlike in this case, however, the information at issue in Bowers — personal tax information — was protected by a statute that expressly prohibited disclosure, OCGA § 48-7-60 (a). See Bowers, 265 Ga. at 250. The first division of Bowers addressed the ability of the petitioners to sue under the ORA to prevent disclosure of the records. We acknowledged that the federal counterpart to Georgia's Open Records Act, the Freedom of Information Act (FOIA), "affords no private right of action to enjoin agency disclosure." Bowers, 265 Ga. at 248. But we concluded that the ORA "materially differs from the FOIA" because the Georgia statute expressly creates a cause of action "'to enforce compliance'" with the act. Id. at 248-249 (quoting OCGA § 50-18-73 (a)). In discussing this issue, we noted that the ORA "has certain exceptions enumerated at OCGA § 50-18-72 (a)." Bowers, 265 Ga. at 248. We then said: "While the enumerated exceptions are similar to those contained in the FOIA, this Court has determined that the Georgia Act

13

*mandates the nondisclosure* of certain excepted information." Id. at 248

(emphasis in original).[7]

Bowers did not explain what statutory language it was relying on when it said the ORA "mandates" nondisclosure or what it meant by "certain excepted information." CCRF argues that, like the Court of Appeals, we should read

---

[7] For this proposition, Bowers cited only Harris v. Cox Enterprises, Inc., 256 Ga. 299 (348 SE2d 448) (1986). Harris, however, does not actually provide any guidance on the question of whether a government agency has discretion to disclose records exempted from required ORA disclosure. In Harris, an agency refused to disclose requested records; on appeal, this Court affirmed the trial court's ruling that the records were not exempted from disclosure on the ground that there was an ongoing criminal investigation; and on motion for reconsideration, we remanded the case for the trial court to determine if any part of the records needed to be redacted because disclosing that information would be an invasion of personal privacy. See id. at 299-301. In deciding that such redaction might be necessary, we relied on language from an old version of the ORA, which said that all records were required to be disclosed "'except those which by order of a court of this state or by law are prohibited from being open to inspection by the public.'" Id. at 301 (quoting former OCGA § 50-18-70 (a)). The ORA exceptions at that time were much different: "'records that are specifically required by the federal government to be kept confidential or . . . medical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy.'" Id. (quoting former OCGA § 50-18-72 (a)). We explained that "[t]he language of the statute mandates the maintenance of confidentiality of records" that were covered by these exceptions. Id. Thus, Harris dealt with a different version of the ORA, which expressly said that the only records not required to be disclosed were those "*prohibited* from being open to inspection by the public." By the time of Bowers, the ORA had no language like the language interpreted in Harris, and had more exemptions from mandatory disclosure, not all of which were prohibitions on disclosure; as discussed previously, the language of the current ORA continues to differ from the Harris-era statute, and the non-prohibitive exemptions have multiplied.

To support its reading of Bowers, CCRF also cites Griffin-Spalding County Hosp. Auth. v. Radio Station WKEU, 240 Ga. 444 (241 SE2d 196) (1978), which said that the former Open Records Act "requires a custodian of public records to preserve the confidentiality of information that the public does not have a right to see." Id. at 447. That case, however, does not apply here because it was about whether an agency was required to create and maintain two separate records, one with information the public may see and one with information it may not see. See id. The Court rejected that notion, explaining that the Open Records Act merely required redaction of existing records. See id.

14

"certain excepted information" to refer broadly to *all* information excepted from disclosure by OCGA § 50-18-72 (a). Unlike CCRF's proposed reading of the statute itself, that would not be an unreasonable interpretation of this passage in Bowers. However, Bowers can also be fairly read as referring to only *certain* excepted information, meaning only records within certain specific exemptions from the ORA's general disclosure requirement. This narrower reading comports with the statutory text, which at the time of Bowers expressly prohibited disclosure in some but not all exemptions (as the current version of the ORA does as well). When Bowers was decided in 1995, OCGA § 50-18-72 expressly said that it did not repeal the laws prohibiting disclosure of records covered by attorney-client privilege, attorney work product, and tax matters. See former OCGA § 50-18-72 (e) (1)-(3). And at that time, OCGA § 50-18-71.1 (a) prohibited the disclosure of "an exhibit tendered to the court as evidence in a criminal or civil trial . . . without approval of the judge assigned to the case."[8] Moreover, if "certain excepted information" is read to refer only

---

[8] The ORA has been amended several times since Bowers, including adding dozens of record categories to the list of exemptions and rearranging some provisions. As noted in footnote 5 above, the provision addressing evidence used in trials is now found in OCGA § 50-18-72 (c) (1).

to provisions that themselves "mandate[ ] the nondisclosure" of the records to which they apply, Bowers's statement does not contradict the plain language of the current version of OCGA § 50-18-72, as we have discussed in Division 2 above. Accordingly, we will follow this narrower understanding of the passage in Bowers, and we disapprove any interpretation to the contrary.[9]

We do not disapprove, however, the holding of Bowers's first division that parties with an interest in nondisclosure of public records pertaining to them may pursue a lawsuit to seek compliance with the ORA. As Bowers recognized and as we discussed in Division 2, some provisions of the ORA expressly prohibit disclosure, so an action to enjoin disclosure of information covered by those provisions would be an action to enforce compliance with the ORA, which is expressly authorized by OCGA § 50-18-73 (a). Thus, under Bowers, CCRF was entitled to file this lawsuit to argue that the ORA prohibits disclosure of the

_____

[9] CCRF asserts that its broad interpretation of Bowers has been consistently followed. That is incorrect. Bowers has been cited by this Court six times, by our Court of Appeals five times, and once each by a federal district court and a New Mexico court, but never — aside from the Court of Appeals in this case — for the proposition that the ORA's exemptions universally mandate nondisclosure of the records they cover. The closest to the mark is Howard v. Sumter Free Press, 272 Ga. 521 (531 SE2d 698) (2000), which relies on Bowers to hold that compliance with the ORA is mandatory. The mandatory nature of the ORA's requirements is not in dispute, however; our conclusion is that nondisclosure of all records covered by every ORA exemption is not a requirement of the ORA.

16

records CFA requested. But just because CCRF could bring this case does not mean that it wins.

In the second division of <u>Bowers</u>, the Court held that the tax information the petitioners sought to keep confidential could not be disclosed because OCGA § 48-7-60 (a) required that "tax information be maintained inviolate" and the ORA at that time expressly said that it "'shall not be construed to repeal . . . [s]tate laws making certain tax matters confidential.'" <u>Bowers</u>, 265 Ga. at 250 (quoting former OCGA § 50-18-72 (e)). Thus, the holding in <u>Bowers</u>'s second division — that the tax information in question could not be disclosed — was based on a provision that expressly prohibited disclosure. This holding does not help CCRF. The two ORA exemptions on which CCRF relies, OCGA § 50-18-72 (a) (35) and (36), do not contain any language prohibiting disclosure, and CCRF has not identified any other law that prohibits disclosure of the records involved in this case.[10]

4.      Finally, CCRF warns that our ruling against its proposed

---

[10] Because this holding in <u>Bowers</u> was based on an explicit prohibition on disclosure found in a statute referenced but not located in the ORA, <u>Bowers</u> seems to conclude that a lawsuit under the ORA can be used to enforce a prohibition on disclosure found elsewhere in the law, at least where the disclosure is being considered due to an open records request. This case does not require us to consider that question, because CCRF seeks enforcement only of two provisions in the ORA.

interpretation of the ORA will turn Georgia into a state in which private information is released willy-nilly by government agencies; never again will it be safe to provide the sources of research funding or even trade secrets to a state agency. But even assuming that government agencies are yearning to set their records free, they remain prohibited by law — both provisions in the ORA and independent state and federal statutes — from disclosing a wide range of information. Just as the tax information in <u>Bowers</u> was protected by OCGA § 48-7-60 (a), a company that worries about the release of its trade secrets can rely on OCGA § 50-18-72 (a) (34). CCRF may believe that broader protection for research documents is good policy, but that is a question for the General Assembly, not this Court.

In a variation of this argument, CCRF asserts that allowing government agencies to release research records will ensure that no private entity will ever again contract with a public university for research. But the key word is *contract*. Nothing in the ORA or in our decision today prevents agencies from promising by contract not to disclose information that the ORA does not require them to disclose, assuming that the contract is within the agency's authority to enter and is otherwise valid. The problem for CCRF is that it appears to have

18

no confidentiality agreement binding on the Board. The ORA cannot remedy that oversight for CCRF.[11]

Finally, it appears that the interpretation of the ORA that CCRF claims we must *continue* to follow to keep the heavens from falling has never *actually* been followed. If every public record covered by an exemption listed in OCGA § 50-18-72 (a) were prohibited from disclosure, then many government agencies have been blatantly and routinely violating the ORA Act for years without any apparent concern. For example, in an effort to obtain the public's assistance in identifying and apprehending criminals, Georgia's law enforcement agencies regularly disclose sketches of and other information about suspects in ongoing investigations, even though OCGA § 50-18-72 (a) (4) exempts from ORA's disclosure requirement "[r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, other than initial police arrest reports and initial incident reports." Agencies announce public birthday congratulations to employees, even though paragraph (a) (21) exempts from the ORA's disclosure requirement "[r]ecords

---

[11] We express no opinion on the validity or application of any confidentiality agreement CCRF has with Dr. Priestly.

concerning public employees that reveal the public employee's . . . day and month of birth." And public universities commonly release names and other information about donors, even though paragraph (a) (29) does not require the disclosure of "[r]ecords maintained by public postsecondary educational institutions . . . that contain personal information concerning donors or potential donors to such institutions or foundations." CCRF points to no case in which a party has complained about, much less obtained relief for, discretionary disclosures of this type.

CCRF responds to this reality by asserting that these kinds of disclosures are allowed even under its reading of the ORA so long as the agency makes the disclosure independently of an open records request. Under this approach, the Board here could disclose the same information CCRF has been vigorously litigating to keep confidential if the Board just says that it is doing so on its own volition rather than in response to CFA's open records request. The fact that the ruling CCRF seeks would be essentially meaningless in practice is yet another reason to reject it. We believe that the interpretation of the ORA that we announce today has long been the general understanding and practical application of Georgia's open records law.

20

For these reasons, the Court of Appeals erred in holding that all records that are exempted from the ORA's general disclosure requirement under OCGA § 50-18-72 (a) are prohibited from disclosure to the public. Because the records CCRF seeks to keep confidential are not subject to any prohibition against disclosure, we reverse the Court of Appeals' judgment.

Judgment reversed. Hines, C. J., Melton, P. J., Benham, Hunstein, Blackwell, Boggs, JJ., and Judges John Flythe and J. Kevin Chason concur. Peterson, J., not participating. Grant, J., disqualified.

Decided June 18, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 323.

Arnall Golden Gregory, Henry R. Chalmers, Megan P. Mitchell, for Campaign for Accountability.

Dentons US, Thurbert E. Baker, Nathan L. Garroway, Mark A. Silver, for Consumer Credit Research Foundation.

Christopher M. Carr, Attorney General, Annette M. Cowart, Russell D. Willard, Senior Assistant Attorneys General, Jennifer Colangelo, Assistant Attorney General, for Board of Regents of the University System of Georgia.

Jones Day, Peter C. Canfield, Jason T. Burnette, Meredith C. Kincaid, Alex Potapov, amici curiae.